James L. WRIGHT, (Plaintiff) Appellant,

v.

HABCO, INC., (Defendant) Respondent.

No. 52680.

Supreme Court of Missouri,
Division No. 1.

Oct. 9, 1967.

Gray & Sommers, James E. Heckel, St. Louis, for plaintiff (appellant).

Evans & Dixon, William Wallace Evans, St. Louis, for respondent.

HOLMAN, Judge.

In this action plaintiff sought to recover damages in the sum of $167,000 for personal injuries he sustained in a fall from a scaffold while working in defendant's building. After the facts had been fully developed by admissions, interrogatories, and depositions the defendant filed a motion for summary judgment based upon the con-

tention that plaintiff was an employee, or borrowed employee, of defendant and hence his exclusive remedy against defendant was under the Missouri Workmen's Compensation Law. The trial court sustained the motion and entered a judgment in favor of defendant. Plaintiff has appealed.

Plaintiff was employed by Manpower, Inc., on January 2, 1964, and continued to work for it until March 5, 1964, the date of his injury. Manpower, Inc. was engaged in the business of furnishing workmen to its customers, usually on a temporary basis. In this instance Manpower paid plaintiff the minimum rate of $1.25 an hour, and charged its customers for whom he worked at the rate of $1.97 per hour. From the amount collected, in excess of the amount paid plaintiff, Manpower paid certain expenses such as workmen's compensation and unemployment compensation insurance. Also included in that amount was a commission for Manpower representing its operating expenses and profit. Manpower withheld from plaintiff's wages the required amount for social security, income, and earnings taxes.

Habco is a real estate holding company which owns and leases real estate. The building where plaintiff was injured was purchased by Habco in June 1963. It had been vacant for an extended period of time and was in need of extensive cleaning and renovation before it could be used by a new tenant. Defendant employed Alfred Johnson to supervise the renovation. It also employed Fred Gildehaus, a carpenter. Both of these men were familiar with the building as they had been employees of the previous owner.

On January 20, 1964, plaintiff and one John Owen were sent out by Manpower to work for defendant. Plaintiff worked at cleaning up the building from that time until the time of his injury. Manpower furnished no equipment but merely instructed plaintiff to report to Mr. Johnson. It is undisputed that Mr. Johnson gave plaintiff directions as to the work he was to perform. Plaintiff testified that Mr.

Johnson would tell them each morning what he wanted them to do that day; that Mr. Johnson was his "boss" on that job and he had no other boss. At the time of his injury plaintiff was working on a scaffold removing conduit pipes from one of the ceilings in the building. After starting to work in the defendant's building plaintiff did not report to the Manpower office except after work on Friday afternoons when he received his wages for the week.

It appears from the interrogatories answered by defendant, which were read in evidence, that defendant did not file a notice of plaintiff's accident with the Division of Workmen's Compensation, and that neither it nor its insurer made any payment of workmen's compensation or medical expenses to plaintiff; that Manpower had withheld social security and income tax payments from plaintiff's paycheck and that such had not been withheld by defendant. It was agreed that plaintiff had filed a claim under the Workmen's Compensation Law against Manpower and that in its answer Manpower admitted that at the time of the accident it was the employer of plaintiff; the evidence also showed that defendant had filed an election to accept the workmen's compensation law effective October 10, 1962, and that plaintiff had never rejected that law.

Harry M. Baumstark, the president and chief stockholder of defendant, stated in his deposition that he did not consider plaintiff an employee of Habco but considered him an employee of Manpower. The branch manager of Manpower also testified that when they sent employees out to work for customers they expected the customer to use the employee in the classification of work for which he was obtained. It also appeared that in accepting the employees the customer signed an agreement containing certain conditions, including a provision that the customer would not employ the person furnished to him by Manpower for a period of at least 90 days following the completion of the work being performed.

Civil Rule 74.04(h), V.A.M.R. provides that in no case shall a summary judgment "be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

The principal question presented upon this appeal is whether it may be said as a matter of law that plaintiff, at the time of his injury, was an employee of Habco within the meaning of the Workmen's Compensation Law. See Chapter 287 (unless otherwise specified, all statutory citations are to RSMo 1959, V.A.M.S.). If he was such an employee his exclusive remedy against defendant is under the compensation law and he is precluded from maintaining an action for damages such as the one here involved. § 287.120.

In this case there is little, if any, dispute concerning the essential facts. Defendant had elected to accept the Workmen's Compensation Law and plaintiff had never rejected that law. Plaintiff was in the general employment of Manpower. He had been employed with the understanding that he would work for Manpower's customers. For several weeks before his injury he had been working for defendant under the exclusive directions of defendant's foreman.

■ For reasons hereinafter discussed we have concluded as a matter of law that plaintiff was an employee of defendant at the time he was injured; that his exclusive remedy was under the Compensation Law and hence the trial court did not err in entering a summary judgment in favor of defendant. We are supported in our conclusion by the following cases: Patton v. Patton, Mo., 308 S.W.2d 739; Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516; Daniels v. MacGregor Co., 2 Ohio St.2d 89, 206 N.E. 2d 554; Chickachop v. Manpower, Inc., 84 N.J.Super. 129, 201 A.2d 90, and St. Claire

v. Minnesota Harbor Service, Inc., D.C., 211 F.Supp. 521.

■ As stated in the Ellegood case, "the relation of employer and employee exists as between a special employer to whom an employee is loaned and said employee whenever the following facts concur: (a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue." 162 S.W.2d l.c. 633.

In considering those requirements as applied to the case before us we think it is quite clear that plaintiff consented to work for defendant and that such was pursuant to an implied contract between them. In this case plaintiff knew when he was hired by Manpower that all of his work would actually be performed for various customers of his general employer. The very fact that he entered into an employment arrangement of that nature would constitute a general consent to work for special employers such as defendant. Also, plaintiff had actually entered upon that work and had performed same under the exclusive direction of defendant's foreman for several weeks before he was injured. Unquestionably, defendant had the power to control the details of the work being performed by plaintiff and had actually exercised that control for several weeks.

The Daniels, Chickachop, and St. Claire cases, supra, are of special interest because they all involve the same general employer (Manpower) as in the case at bar, and the factual situations described in those cases were substantially the same as in the instant case. In each of those cases it was held that the plaintiff was the employee of the customer or special employer; that his remedy was under the Workmen's Compensation Act, and that he could not maintain

a common law action for damages against his special employer. We agree with those decisions.

Plaintiff contends that the trial court erred in entering a summary judgment. He says that there was an issue of fact as to whether defendant had exclusive control over the work performed by plaintiff and as to whether there was an express or implied contract between plaintiff and defendant to engage in the work. It is true, as plaintiff contends, that the agreement between Manpower and defendant contained certain restrictions. Defendant was expected to use Manpower employees in the type of work for which they were requested. This was because a different charge is made for other work classifications. Such employees were not to operate machinery or automotive equipment without the consent of Manpower. That is understandable because such work involved questions concerning insurance, chauffeur's licenses, etc. There were restrictions on the handling of cash by such employees, the reason for which is obvious. The customers also agreed not to employ Manpower workmen for 90 days following the completion of the work done for the customer. That provision was undoubtedly necessary in order to keep customers from obtaining Manpower's better workmen by hiring them directly as regular permanent employees.

The foregoing restrictions would have no effect upon the right of defendant to control the work in which plaintiff was engaged. He was sent to defendant's building to work as a laborer. The only direction given him by Manpower was to report to defendant for work. Defendant's foreman was his "boss" in doing that work. The evidence makes it clear that plaintiff consented to work for defendant and actually performed the work under the sole direction of defendant's foreman. We are unable to find any factual issue which should have been presented to a jury.

In support of his contentions plaintiff has cited the Ellegood and McFarland cases which we think support the trial court's action. He has also cited Scherer v. Bryant, 273 Mo. 596, 201 S.W. 900, Schepp v. Mid City Trucking Co., Mo.App., 291 S.W.2d 633, and Evans v. Farmers Mutual Hail Ins. Co., 240 Mo.App. 748, 217 S.W.2d 705. In Scherer the plaintiff was an employee of the Hodge Company which had been employed to repair some of defendant's engines. He was injured and sued defendants alleging that their engineers were negligent. Defendants contended that the engineers had been loaned to plaintiff's employer. It was held that there was a jury question as to defendant's liability since it did not appear that the Hodge Company had authority to direct the engineers as to the manner or method of running the engines. This case does not support plaintiff.

Schepp was a workmen's compensation case which involved the question of the compensation liability of the general employer. Plaintiff was a truck driver and defendant had furnished (leased) plaintiff and a tractor to a trucking company (PIE) for a day. It was held that defendant and not PIE was plaintiff's employer under the Workmen's Compensation Law. The court, in arriving at that conclusion, gave considerable weight to the fact that (1) the arrangement was only for a day, (2) plaintiff and the tractor were furnished as a unit and it did not appear that defendant had relinquished *complete* control, and (3) defendant had made certain significant admissions against interest. Those factors distinguish the Schepp case from the case at bar.

Evans was also a workmen's compensation case. Plaintiff was an insurance adjuster employed by a Missouri company. He had been loaned temporarily to an Iowa insurance company and was injured while working for it. The arrangement was that the Missouri company would pay plaintiff's salary and expenses and bill the Iowa company for that amount, plus some additional amount for its profit. The claim was filed against both companies, but the commission

found that the Missouri company was the sole employer and the court of appeals affirmed. The court ruled that the Missouri company did not surrender control of plaintiff and that there was no evidence that plaintiff consented to a change of employers. It may be that the Evans case is distinguishable from the instant case, but the facts are sufficiently similar to permit a conclusion that it supports the contentions of plaintiff. To the extent that it may be so construed, we think it is unsound and should no longer be followed.

■ Plaintiff also contends that his claim against defendant would not be governed by the compensation law because of the exclusionary provisions of § 287.-040(3), which reads as follows: "The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an *independent contractor* but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work." (Italics ours.) He says that Manpower was an independent contractor engaged to clean up defendant's building. That contention is based upon an erroneous factual premise and is without merit. There is no evidence to support a finding that Manpower contracted to clean defendant's building. It merely furnished two laborers to do any type of general labor defendant might direct them to do. In that situation Manpower was not an independent contractor and § 287.-040(3) has no application to this case.

As we have heretofore stated, the trial court did not err in entering a summary judgment in favor of defendant.

Judgment affirmed.

HENLEY, P. J., and SEILER, J., concur.

STORCKMAN, J., not sitting.