In June of 1977 Rodney Terry, a minor, commenced work on a summer job at Read Steel Products, Inc. (Read Steel). While engaged in this employment, Terry was injured when his hand caught in a machine he was operating. As a result of the injury, Terry sought to receive workmen's compensation benefits from Manpower, Inc., an employment agency which provided Read Steel with temporary laborers.
Subsequently, Terry's father filed a third-party action on behalf of his son against Read Steel and Edsell Pearce, a co-employee of Terry's. We are not here concerned with the co-employee action. CNA Insurance, the insurance carrier for Manpower, was allowed to intervene and seek recovery for the amount paid in settlement of Terry's workmen's compensation claim.
Read Steel filed a motion for summary judgment based upon its immunity as an employer under the Workmen's Compensation Act. The trial judge ruled in favor of Read Steel. Judgment was made final under Rule 54 (b), A.R.C.P., and Terry appealed.
The issue presented is whether an employer-employee relationship, within the meaning of the Alabama Workmen's Compensation Act, existed as a matter of law between Read Steel and the plaintiff's minor son, Rodney Terry. If, when Terry was injured, Read Steel was Terry's "employer" for purposes of workmen's compensation liability, then Terry's tort claim against Read Steel is barred by Code 1975, § 25-5-53. That section provides in pertinent part:
 "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at common law, by statute or otherwise on account of said injury, loss of services or death. Except as provided in this article and article 2, as the case may be, of this chapter, no employer included within the terms of this chapter and no officer, director, agent, servant or employee of such employer shall be held civilly liable for any personal injury to or death of any workman who is an employee of the same employer and whose injury or death is due to an accident while engaged in the service or business of the employer, the cause of which accident originates in the employment. . . ."
The trial court held as a matter of law that Terry was an employee of Read Steel within the meaning of the Workmen's Compensation Act and that Terry's claim against Read Steel was barred by § 25-5-53. Section 25-5-1 (6) defines "employee" as "every person . . . in the service of another under any contract of hire, express or implied. . . ." Courts in this jurisdiction have applied the "reserved right of control" *Page 864 
test in determining whether the employer-employee relationship exists. See, e.g., Dennis v. Huff, 406 So.2d 412 (Ala.Civ.App. 1981). We do not find this test dispositive in cases such as the one here, where a general employer such as Manpower merely provides laborers to special employers such as Read Steel and performs clerical payroll tasks.
Courts in other jurisdictions have addressed the problem more squarely than this Court. In Wright v. Habco, Inc.,419 S.W.2d 34 (Mo. 1967), the court affirmed summary judgment for the defendant special employer, observing:
 "Plaintiff contends that the trial court erred in entering a summary judgment. He says that there was an issue of fact as to whether defendant had exclusive control over the work performed by plaintiff and as to whether there was an express or implied contract between plaintiff and defendant to engage in the work. It is true, as plaintiff contends, that the agreement between Manpower and defendant contained certain restrictions. Defendant was expected to use Manpower employees in the type of work for which they were requested. This was because a different charge was made for other work classifications. Such employees were not to operate machinery or automotive equipment without the consent of Manpower. That is understandable because such work involved questions concerning insurance, chauffeur's licenses, etc. There were restrictions on the handling of cash by such employees, the reason for which is obvious. The customers also agreed not to employ Manpower workmen for 90 days following the completion of the work done for the customer. That provision was undoubtedly necessary in order to keep customers from obtaining Manpower's better workmen by hiring them directly as regular permanent employees.
 "The foregoing restrictions would have no effect upon the right of defendant to control the work in which plaintiff was engaged. He was sent to defendant's building to work as a laborer. The only direction given him by Manpower was to report to defendant for work. Defendant's foreman was his "boss" in doing that work. The evidence makes it clear that plaintiff consented to work for defendant and actually performed the work under the sole direction of defendant's foreman. We are unable to find any factual issue which should have been presented to a jury."
Id., at 37.
Terry's only argument is that Manpower reserved the right of control by requiring Read Steel to obtain prior written permission from Manpower before authorizing Terry to operate machinery or motor vehicles, as set out in the Manpower work ticket filled out by Read Steel:
 "[Read Steel, as customer, hereby] . . . (2) confirms prior agreement between Manpower and customer, with respect to the services performed hereunder and any future services, that (a) customer shall not . . . authorize such employees to operate machinery or motor vehicles without prior written permission from Manpower in each incidence. . . ."
This argument is answered by the reasoning of the court inWright, supra. The following quotation from the work ticket drives home the point made in Wright:
 "[2](b) Manpower's insurance does not cover loss or damage caused by Manpower employees operating customer's owned or leased motor vehicle(s), and customer therefore accepts full responsibility for claims . . . arising out of or involving violation by customer of paragraph 2 (a) above. . . ."
Thus, Manpower did not reserve control over Terry's work, but merely informed Read Steel that written permission to operate machinery or vehicles was necessary for liability insurance coverage.
Terry introduced an affidavit of Paul J. McMahon, branch manager of Manpower, in opposition to Read Steel's motion for summary judgment. McMahon stated that "Manpower exercises ultimate control over its employees. In the case of Manpower *Page 865 
employees (temporary workers) at the Read premises, Read requested and did receive permission from Manpower for the Manpower employees to operate machinery at Read." Similarly argumentative and conclusory statements of "control" were rejected in view of the facts in St. Claire v. Minnesota HarborService, Inc., 211 F. Supp. 521 (D.Minn. 1962).
The court in St. Claire, supra, concluded a thorough disposition of a claim such as Terry's with the following:
 "This brings up the final and most damning fact. What do the defendant and others who use the services of Manpower get when they buy the commodity that Manpower is selling? In this case the plaintiff received a wage of $1.05 per hour but defendant had to pay $1.71 per hour to get the plaintiff from Manpower. What did the defendant pay that $0.66 differential for? . . . There is more than a vague connection between the extra $0.66 per hour paid by defendant and the Workman's Compensation which this unfortunate plaintiff received. Part of that $0.66 per hour will pay someone's premium, and in the eyes of the law it must be deemed to have paid the premium for this plaintiff. In other words, the plaintiff is suing in tort the man who paid for his Workman's Compensation. The defendant paid part of this extra $0.66 per hour for the sole and express purpose of assuring that employees which Manpower sent over for temporary employment would be covered by Workman's Compensation. The defendant paid part of this extra $0.66 per hour for the sole and express purpose of not having to defend actions such as the one which has been brought here. This case strikes at the heart of the Workman's Compensation law; this case is in unequivocal opposition to the well-known principles on which Workman's Compensation is founded.
 "It is therefore the opinion of this Court that where the primary employer (Manpower here) does no more than provide personnel for the use of the ultimate employer (the defendant here), where the fees received by the primary employer from the ultimate employer include provision for Workman's Compensation coverage for the employees supplied, where this Workman's Compensation was in force at the time of the accident, and where the injury occurred (1) while the employee was under the control of the ultimate employer (the defendant here) and (2) while the employee was engaged in a task which all the parties (the plaintiff, the defendant and Manpower) must be deemed to have contemplated that the employee would perform (i.e., while the plaintiff was within the scope of his employment), then the injured employee cannot sue the ultimate employer as a third-party tort-feasor.
 "In this case that means that the defendant is entitled to a summary judgment, for there are no genuine issues as to the facts.
Id., at 528. (Emphasis in original.)
In several of the cases addressing this question, includingWright v. Habco, supra, and Chickachop v. Manpower, Inc.,84 N.J. Super. 129, 201 A.2d 90 (1964), the courts have adopted the tests set out at 1C A. Larson, The Law of Workmen'sCompensation, § 48 (1980):
 "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
 (a) the employee has made a contract of hire, express or implied, with the special employer;
 (b) the work being done is essentially that of the special employer; and;
 (c) the special employer has the right to control the details of the work.
 "When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation. . . ."
1C A. Larson, The Law of Workmen's Compensation, § 48 (1980).
Finding these tests consistent with the well-reasoned decisions in the cases cited above, we will follow these criteria in order *Page 866 
to determine whether Rodney Terry's "special employer," Read Steel, was also Terry's "employer" within the meaning of Alabama's Workmen's Compensation Act and, thus, immune from civil suit under Code 1975, § 25-5-53. When interpreting the statutory definitions of "employer" and "employee," Code 1975, § 25-5-1 (4) and (6), the courts must use criteria which will help apply these general definitions to the specific situation at bar. See, e.g., Craig v. Decatur Petroleum Haulers, Inc.,340 So.2d 1127 (Ala.Civ.App. 1976).
We find that the most important criterion to be scrutinized is the requirement of a contract of hire, express or implied, between Terry and Read Steel. Certainly, the work being done was essentially that of the special employer, Read Steel, and Read Steel controlled the details of the work.
It is obvious that Terry consented to work for Read Steel and that his consent was pursuant to a contract between them. See,Wright v. Habco, Inc., supra, and Counts v. Monsanto Co.,278 F. Supp. 655 (N.D.Ala. 1966). Although placed on Manpower's payroll, Terry was hired by Read Steel to work for Read Steel. As Terry testified:
"Q Now, when did you first go to Manpower?
A I didn't go to Manpower directly at all.
Q Okay. Where did you go?
 A I went to the office at Read Steel and went up to the shop, and he got my Social Security number — well, he didn't get it then, he come by and got it later, and they just showed me my foreman and put me to work.
 Q Do you remember who you met or talked with on that occasion?
A I can't recall his name.
Q Okay. Who was your foreman?
A Mr. Pearce, Edsell Pearce.
Q So you never went to Manpower; is that right?
A Right.
 Q So you started to work directly with Read Steel on June 15th of '77?
A Yes.
Q And that's for summer employment, I assume?
A Yes, sir.
 Q And that's the first place and only place that you were going to work that summer?
A Yes.
Q Now, did you ever talk with anybody at Manpower?
A No, sir.
 Q Have you ever had any dealings with anybody at Manpower?
 A Just we went by there — to get my compensation check, and that was it.
Q After the accident?
A Yes, sir.
 Q Prior to the accident did you ever talk with anybody at Manpower?
A No, sir.
 Q Prior to the accident did you ever sign any papers or anything with anyone at Manpower?
A No."
We hold that Read Steel was an "employer" of Rodney Terry under Alabama's Workmen's Compensation Act and, as a result, cannot be held civilly liable for the personal injury sustained by Terry. Code 1975, § 25-5-53. Presumably, Manpower was also Terry's employer, was liable for workmen's compensation, and was immune from suit, but those questions are not before us.
We further conclude that our holding is consistent with the summary judgment granted below. The rule is as follows:
 "The burden of proving that no genuine issue of material fact exists rests on the proponent of the summary judgment motion. Amason v. First State Bank, 369 So.2d 547 (Ala. 1979). However, when the moving party has met that burden, the party opposing the summary judgment motion must produce at least a scintilla of evidence which would create a triable issue of fact. Id."
Scott v. Pizitz, Inc., 406 So.2d 970, 972 (Ala.Civ.App. 1981). *Page 867 
By applying this rule in the present case, the question becomes, "Is there a scintilla of evidence that Read Steel was not an employer of Terry under Alabama's Workmen's Compensation Act?" Our answer to this query is no.
For the reasons stated, the judgment is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.