TORBERT, Chief Justice.
The petitioner in this case, Bonnie Kay Stewart, sued the respondent, Carter Realty Co., Inc., for damages based on injuries she received in a fire. Stewart worked as a resident manager of an apartment complex for which Carter Realty served as rental and management agent, and one of the claims she asserted in this suit was for worker’s compensation. After reviewing the extensive evidence presented in this case, the trial court entered a judgment in favor of Carter Realty. Stewart appealed, and the Court of Civil Appeals affirmed the judgment of the trial court. See Stewart v. Carter Realty Co., 518 So.2d 117 (Ala. Civ.App.1986).[1] The case is before us on writ of certiorari.
The only issue presented for our review concerns Stewart’s status as an “employee” of Carter Realty. The trial court ruled that she was not such an employee, and that she was therefore ineligible to claim worker’s compensation from Carter Realty. The basis of this decision was that the owners of the apartment complex had retained a right of control over Stewart’s work, and that she was therefore the employee of the apartment owners, and not the employee of their rental agent, Carter Realty.
In affirming, the Court of Civil Appeals applied the test of American Tennis Courts, Inc. v. Hinton, 378 So.2d 235 (Ala. Civ.App.1979), cert, denied, 378 So.2d 239 (Ala.1979), to the facts of this case. We granted certiorari to consider whether American Tennis Courts was properly applied by that court.
American Tennis Courts essentially restates the settled test for determining whether an employer-employee relationship exists for the purposes of the worker’s compensation law. This test, borrowed from agency principles as they apply to the relationship of master and servant, provides a method for determining when a party is a servant or employee as opposed to an independent contractor. As articulated in American Tennis Courts, “[t]he test to be used in determining the relationship of [employee to employer] is whether [the employer] had a reserved right of control over the means and agencies by which the work was done or the result produced, not the actual exercise of such control.” Id., at 237. If a reserved right of control exists, then a worker is an employee, as opposed to an independent contractor, and the provisions of Alabama’s worker’s compensation laws apply to the relationship between the worker and his employer.
Had the instant case presented the question of whether Stewart was an “employee” as opposed to an “independent contrac *120 tor,” the test of American Tennis Courts would have resolved the issue. However, no one contends in this case that Stewart was an “independent contractor.” Indeed, it appears to be uncontested that Stewart was someone’s “employee” within the meaning of the worker’s compensation law. The question is: whom did she serve as an employee, Carter Realty or the owners of the apartments? As a legal and logical matter, the “control” test of American Tennis Courts often cannot provide a meaningful answer to such a question.
Inherent in the Court of Civil Appeals’ application of the “control” test is the assumption that a worker can have only one master for the purposes of the worker’s compensation law. Whatever validity this assumption might have had at common law, in cases involving worker’s compensation, such an assumption ignores both the realities of the workplace and the teachings of precedent.[2]
For instance, in the case of general and special employers, we have indicated that both the general and the special employer may be liable for worker’s compensation, even though only the special employer actually controlled the details of the employee’s work. See Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052 (Ala. 1986) (dictum); Terry v. Read Steel Products, 430 So.2d 862 (Ala.1983) (dictum). Moreover, in Terry, we expressly noted that the control test need not be dispositive in determining employer-employee status in cases involving general and special employers. See id., at 864. Thus, our precedent recognizes that compensation liability may extend to multiple employers and that the “control” test has limitations in such situations.
Another typical employment relationship which demonstrates the limitations of the control test is that of “joint employment.”
Professor Larson’s comments on this relationship are instructive:
“Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen’s compensation.
“Joint employment is possible, and indeed fairly common, because there is nothing unusual about the coinciding of both control by two employers and the advancement of the interests of two employers in a single piece of work. It has already been noted that, in the familiar situation of the leased truck and driver, or other leased heavy equipment and operator, the lessor may be accomplishing his business purpose of furnishing equipment and labor at a profit, while the lessee is at the same moment accomplishing his business purpose of transporting goods, digging ditches, or building roads, and the lessor may retain enough control to safeguard his interest in the valuable equipment, while the lessee may assume enough control to get his work done efficiently.”
1C A. Larson, Workmen’s Compensation Law, § 48.42, at 8-511 (1986). Professor Larson’s description of joint employment demonstrates the sometimes indeterminate nature of the “control” test. Where there is evidence of a measure of control over an employee by two or more putative employers, a finding of “control” and liability in just one of them would be obviously erroneous. As a logical matter, “control” cannot properly be used to establish the compensation liability of one employer as op *121 posed to the other in such a situation. Cf Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052, 1054 (Ala.1986) (even “substantial” evidence of an employment relationship with a party in the position of a general employer cannot, of itself, negate the existence of a co-extensive employment relationship with a party in the position of a special employer).
In short, we reject the exclusive use of the “control” test in this case. The issue of Stewart’s status as an employee, as opposed to an independent contractor, was not pertinent to the issue raised in this case. More importantly, the control test can be inconclusive in determining compensation liability as between two or more putative employers, where there is evidence in the record of shared or concurrent control, or evidence of a general-special employer relationship.
In the instant case, the Court of Civil Appeals noted that “[tjhere was certainly some testimony that employees or representatives of Carter directed the employee as to certain aspects of her work....” Stewart v. Carter Realty Co., 518 So.2d at 118. In view of this state of the record, where it appears that both Carter Realty and the owners exercised some measure of control over Stewart, we hold that the Court of Civil Appeals erred in holding that one putative employer was not liable for compensation, on the basis that the other putative employer also exercised “control.” A finding of control in one putative employer does not absolve the other putative employer of compensation liability, where there is evidence of joint or concurrent control.
Consequently, in cases such as this, the finder of fact should concentrate, not solely on control, but also on additional indicia of the employment relationship in determining an employee’s status.
In the instant case, a directed inquiry into the actual contract for hire which bound the employee to either Carter Realty or the owners, or to both, would be particularly in order. Professor Larson has pointed out the overwhelming importance of the employment contract in worker’s compensation cases:
“Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented ... might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages. This reasoning applies not only to the question whether there is any employment relation at all, but also to the question whether one of two or more persons is an employer. In such cases, with all the elements of employment having been established as to some employer, the issue may be solely whether the particular defendant made a contract with the particular employee.”
1C A. Larson, Workmen’s Compensation Law, § 47.10, at 8-287 through 8-291 (1986) (emphasis added). Accordingly, a proper inquiry in this case would be to determine with some clarity the actual parties to this employment contract. If it appears that Carter Realty was a party to the contract and that Carter Realty also exercised control, then that company is at least a joint employer for the purposes of the worker’s compensation law. Similarly, in spite of the appearance of some possible “control” in the owners, if no contractual relationship existed between the owners and Stewart, then Stewart was not their employee, and Carter Realty was the petitioner’s sole employer. In this regard, the finder of fact should restrict its inquiry to evidence of contractual intent occurring during the term of the contract in question.[3]
Finally, we must also reject the alternative reasoning advanced by the Court *122 of Civil Appeals. The “fact”[4] that the owners, rather than Carter Realty, “paid” Stewart is not determinative on this issue as a matter of statutory construction, as numerous cases, including American Tennis Courts, 378 So.2d at 237, make clear. See also Pettaway v. Mobile Paint Mfg. Co., 467 So.2d 228 (Ala.1985); Craig v. Decatur Petroleum Haulers, Inc., 340 So.2d 1127 (Ala.Civ.App.1976), cert. denied, 340 So.2d 1130 (Ala.1977). Similarly, we can find no support in Terry, supra, or Pettaway, supra (which extensively relies on Terry), for the proposition that an “agent” cannot also be an employer for the purposes of the compensation law, as the previous discussion of Terry illustrates.
In view of the foregoing reasoning, we remand this case to the Court of Civil Appeals for further consideration. In this regard, we are advised pursuant to Rule 39(k), Ala.R.App.P., that the trial court, in addition to holding that Carter Realty was not Stewart’s employer, also held that the statute of limitations barred Stewart’s claim. Because this issue was not discussed in the opinion below, it is inappropriate for us to consider it here on certiorari. See Keith v. City of Birmingham, 254 Ala. 487, 49 So.2d 227 (1950). Due to the potentially dispositive nature of this issue, however, the Court of Civil Appeals, upon remand of this case, should first address the arguments of the parties on the matter of the statute of limitations. If no error was committed by the trial court in this regard, then an affirmance of the trial court’s judgment may be in order on this ground.
However, should the statute of limitations not constitute a bar to this action, the Court of Civil Appeals should remand the case to the trial court for additional findings of fact on the issue of Stewart’s status as an employee of Carter Realty. Any further factual determinations by the trial court should be made in accordance with the legal principles outlined in this opinion.
The judgment of the Court of Civil Appeals is reversed, and the cause is remanded for further consideration consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.

. For a more complete summary of the somewhat troubled procedural history of this case. see the opinion of the Court of Civil Appeals.

. The law of master and servant, as it applies to the concept of respondeat superior, often requires a stricter identification of the servant’s master for the purpose of imposing vicarious liability. See Williams v. Tennessee River Pulp & Paper Co., 442 So.2d 20 (Ala.1983). In such cases, therefore, it is possible that a servant with two or more possible “masters” would nevertheless be considered the servant of just one for the purpose of imputing liability to that master. We have, however, expressly rejected any one-to-one correspondence between compensation cases and the common law in the application of the law of master and servant, recognizing that compensation cases require a broader conception of the employer-employee relationship. See id., at 22-23.

. Much reliance in the Court of Civil Appeals’ opinion is placed on the fact that the "owners” fired Stewart, and that the right to fire clearly demonstrates control of the employee. We *122 have examined the record on this matter, as we may do on certiorari when the facts are not in dispute and we wish to better understand the facts treated in the opinion of an appellate court. See, e.g., Life Ins. Co. of Georgia v. Miller, 292 Ala. 525, 296 So.2d 900 (1974).
As the opinion of the Court of Civil Appeals notes, the apartments were eventually sold to new owners. The record reveals, however, that this sale took place prior to Stewart’s termination, and that at the time of her termination, neither Carter Realty nor the owners had any connection to the apartments. Instead, after the sale of the apartments, the new owners replaced Carter Realty with another rental agency and also replaced Stewart.
Such a firing could in no way be evidence of contractual intent as to the contract in issue, because it is simply too remote an occurrence to bear on the contract which controls in this case.

. Although we do not reach this evidentiary issue, we are compelled to note that the "proof’ of the owners’ "payment" is at least inconclusive, in view of the fact that it appears that Stewart was paid, at least in part, by checks drawn on an escrow account that Carter Realty established in its own name to retain the rental profits for the apartments in question. In view of the beneficent purposes of the worker’s compensation law, we are hesitant to approve overly formalistic distinctions as to who paid whom in these cases, where there is any evidence in support of a payment relationship.