Brian Keith TWEEDY and Sandra Tweedy, Plaintiffs–Appellants,

v.

TENNESSEE VALLEY AUTHORITY, Defendant–Appellee.

No. 88–7671.

United States Court of Appeals, Eleventh Circuit.

Aug. 31, 1989.

---

478

Ray O. Noojin, Bruce J. McKee, Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiffs-appellants.

James E. Fox, Deputy Gen. Counsel, Edwin W. Small, Robert C. Glinski, Asst. Gen. Counsels, James M. Casey, Tennessee Valley Authority, Knoxville, Tenn., for defendant-appellee.

Before HILL and COX, Circuit Judges, and SNEED *, Senior Circuit Judge.

PER CURIAM:

Tweedy appeals the granting of summary judgment in favor of TVA by the district court on the ground that Tweedy's claims against TVA were barred by the Alabama Workmen's Compensation Act. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

On November 15, 1984, the Tennessee Valley Authority (TVA) and Gilbert/Commonwealth, Inc. (Gilbert) entered into a staff augmentation contract wherein Gilbert agreed to provide "personnel to perform general engineering ... services related to TVA's nuclear ... power plants in accordance with criteria, procedures, and scheduling requirements established by [TVA]." Under the contract Gilbert was to provide personnel to work under TVA's supervision to supplement TVA's regular engineering staff at the Browns Ferry Nuclear Plant (BFNP).

The contract also provided: (1) All Gilbert employees performing work on TVA's premises must meet citizenship require-

ments, undergo a medical examination, and submit to a security investigation identical to that of regular employees; (2) TVA promised (a) to reimburse Gilbert for the wages it paid to employees providing services to TVA and (b) to pay a fixed percentage of these wages for overhead expenses; (3) Gilbert promised to provide for worker's compensation insurance out of the money it received from TVA; and, finally, (4) TVA reserved the right to control the work performed by Gilbert supplied workers. This contract, slated to expire on November 14, 1986, was extended for an additional period beginning November 15, 1986, and terminating November 14, 1987.

Tweedy applied for work at BFNP in the field engineering section in December, 1986. Initially, two TVA managers interviewed Tweedy and then referred him to Gilbert for employment. Thereafter he was processed through TVA's personnel, health physics, medical and other offices, and attended its training classes (including courses in industrial safety requirements for entering nuclear contaminated zones) Tweedy then began working as an engineering aide, on Gilbert's payroll, but under the supervision of TVA employees. Tweedy slipped and fell on March 18, 1987, while working in TVA's equipment tagging program. The accident occurred as he was descending a permanent ladder while on his way to lunch. At this time, Tweedy was wearing several items of clothing supplied by TVA, which TVA required all employees to wear on the BFNP premises, and which included a pair of shoe covers. Tweedy asserts that the shoe cover on his left foot rolled off of his foot causing him to fall from the ladder.

Tweedy sought and received compensation for his injuries pursuant to the Alabama Workmen's Compensation Act. *See* Ala.Code § 25-5-1 (1986) (the Act). Thereafter Tweedy filed this action against TVA, alleging TVA's negligence proximately caused his injuries and citing nine examples of TVA's alleged negligence. In its an-

---

* Honorable Joseph T. Sneed, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designa-

tion.

swer, TVA asserted its status as a "special employer" under the exclusivity provisions of the Alabama Workmen's Compensation Act, Ala.Code § 25–5–53 (1986), and maintained that each of the negligent acts identified by Tweedy involved open and obvious dangers or the performance of discretionary functions for which TVA could not be held liable. The district court concluded that TVA was a special employer and, consequently, was immune from civil tort liability since Tweedy was covered by the Act. Alternatively, it ruled that eight of the nine alleged negligent acts of which Tweedy complained involved open and notorious dangers and the ninth involved the performance of a discretionary function for which TVA, an agency of the federal government, could not be held liable. TVA's motion for summary judgment was granted.

## II.

### JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 (1982). This court's jurisdiction rests on § 1291.

## III.

### STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Webb v. Ala. Dept. of Pensions & Sec.*, 850 F.2d 1518, 1519 (11th Cir.1988).

## IV.

### ANALYSIS

Tweedy's argument focuses primarily on the contention that the district court erred by concluding that TVA was Tweedy's "special employer" so as to invoke the Alabama Workmen's Compensation Act's exclusive remedy provision. Alabama law, like that of other states, stipulates that when an employee covered by the Act suffers from an injury in an on-the-job accident, benefits under the Act are the exclusive remedy available against the employer, and that the Act bars the employee from maintaining a tort action against the

employer to recover for damages resulting from the accident. *See, e.g., Steagall v. Sloss–Sheffield Steel & Iron Co.*, 205 Ala. 100, 101, 87 So. 787, 788 (1920); Ala.Code § 25–5–53 (1986).

Alabama courts have extended the "exclusive remedy" provision of the Act to include "special employers"—individuals or businesses who, for practical purposes, may be considered primary or co-employers of the injured employee. *See Marlow v. Mid South Tool Co.*, 535 So.2d 120 (Ala. 1988); *Bechtel v. Crown Cent. Petroleum Corp.*, 495 So.2d 1052 (Ala.1986); *Pettaway v. Mobile Paint Mfg. Co.*, 467 So.2d 228 (Ala.1985); *Terry v. Read Steel Prods.*, 430 So.2d 862 (Ala.1983). In order to qualify as a special employer for "exclusive remedy" purposes: (1) the employee must have made an express or implied contract of hire with the special employer; (2) the work being performed by the employee essentially must be that of the special employer; and (3) the special employer must have the right to control the details of the employee's work. *Terry*, 430 So.2d at 865; *accord* 1C A. Larson, *The Law of Workmen's Compensation* § 48.00 (1986). TVA must demonstrate there exists no genuine issue of material fact with respect to these three elements to defeat Tweedy's appeal.

Tweedy does not dispute that at the time of the accident he was performing the work of the TVA. Tweedy does assert that a genuine issue of material fact exists with respect to whether he had an implied contract with TVA and whether TVA, not Gilbert, had the "right to control" his work activities. Our examination of the record leads us to hold otherwise.

The Alabama Supreme Court has explicated the meaning of these requirements in four cases. The first two, *Pettaway v. Mobile Paint Mfg. Co.*, 467 So.2d 228 (Ala. 1985), and *Terry v. Read Steel Prods.*, 430 So.2d 862 (Ala.1983), involved virtually identical facts. In both the labor agency, Manpower, Inc., was in the business of contracting out temporary employees to other employers. In these circumstances, the court had no trouble concluding that the employer to whom the temporaries

were assigned was a special employer for the purposes of the Act. *See Pettaway*, 467 So.2d at 229–30; *Terry*, 430 So.2d at 865–66. Similarly, in *Marlow v. Mid South Tool Co.*, 535 So.2d 120 (Ala.1988), the court held that Mid South was a special employer when the injured employee was obtained from the temporary agency, Kelly Services.

The fourth case, and the only one not involving a temporary agency is *Bechtel v. Crown Central Petroleum Corp.*, 495 So.2d 1052 (Ala.1986). There Crown entered into a personnel supply contract with Pep Services, Inc. (Pep), which undertook to supply Crown with personnel to operate retail service stations. *Id.* at 1054. The contract obligated Crown to pay the employee's wages, worker's compensation insurance, social security contributions, as well as a service charge. Bechtel, the plaintiff worker, was hired by Pep and assigned to work at one of Crown's gas stations where he slipped and fell while working. After receiving payment under the Alabama Workmen's Compensation Act, Bechtel sought a tort recovery against Crown. The trial court granted summary judgment in favor of Crown holding that, as a special employer, Bechtel's suit against it was barred. *See id.* at 1053–54. The Alabama Supreme Court upheld the trial court's decision and relied on the following facts: (1) Bechtel was under the supervision of a Crown employee; (2) Bechtel wore uniforms supplied by Crown; (3) Crown participated in the hiring process; (4) a Crown employee signed Bechtel's time sheets; and (5) a Crown employee had authority to terminate Bechtel's employment. *Id.* at 1054.

This case is remarkably similar to *Bechtel*. The staff augmentation contract between Gilbert and TVA also obligated TVA to pay Tweedy's wages and it stipulated that worker's compensation premiums would be paid out of monies paid to Gilbert by TVA. TVA played a significant role in Tweedy's hiring and training; Tweedy wore coveralls and safety equipment supplied by TVA. TVA employees signed Tweedy's time sheets and approved requests for time off.

In response, Tweedy points to other evidence that suggests that Gilbert employees actually supervised his work. No genuine dispute of a material fact is suggested by this evidence. First, we note that the contract between Gilbert and TVA clearly provides: "All work done by Contractor hereunder shall be reviewed by TVA and subject to TVA approval. TVA shall retain overall responsibility for the technical adequacy of the work when such work is performed under TVA supervision." Second, while Tweedy's affidavits suggest that Gilbert employees worked in Tweedy's area and exercised limited supervisory functions over his work, substantial evidence eliminates any genuine dispute concerning Tweedy's submission to the control and supervision of his TVA supervisor, Presley. Tweedy received his day-to-day assignments from Presley. Further, to the extent that any Gilbert co-workers may have exercised any limited supervisory authority over Tweedy, this was done only at the behest of Presley. The "control" that the "special employer" must assume need not extend to the technical details of a skilled employee's activity. To hold otherwise would tend to strip skilled employees of the protection of workmen's compensation acts. *See* 1C A. Larson, *supra*, § 48.30, at 8–502. Additionally, TVA had the responsibility for training Tweedy and designating his work schedule. TVA furnished Tweedy with all the equipment needed to perform his job, including his uniform. TVA had the right to fire Tweedy. The control necessary to invoke the "special employer" doctrine has been demonstrated by evidence not subject to genuine dispute. We, therefore, affirm.

AFFIRMED.