MAIN, Justice.
Tenax Corporation (“Tenax”) and Tenax Manufacturing Alabama, LLC (“Tenax Alabama”), petition this Court for a writ of mandamus directing the Conecuh Circuit Court to enter a summary judgment in their favor in John Dees’s tort action against them. Tenax and Tenax Alabama contend that they are immune from Dees’s tort claims under the exclusive-remedy provisions of the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975. Additionally, Tenax Alabama contends that it is entitled to a summary judgment because it was not a legal entity when Dees was injured. We grant the petition and issue the writ.
Facts and Procedural History
Tenax owns a plant in Evergreen that makes, plastic netting and other plastic products. Dees worked at the plant for about six months in. 2010 and again for about two months in 2013. Dees went back to work at the plant in July 2014, but, at the direction of the plant’s general manager, Dees had applied to Onin Staffing, LLC (“Onin”), for the job at the Tenax plant. On January 14, 2015, while operating a machine, Dees suffered significant injuries to his left arm.
In December 2015, Dees sued Tenax, Tenax Alabama, Tenax SPA (Italy) (a foreign corporation doing business in Cone-cuh County),[1] Onin, and fictitiously named defendants claiming that, while he was operating a machine at the plant as instructed and according to proper procedures, he was injured as a result of the alleged defective condition of the machine. Dees sought workers’ compensation benefits from Onin, and he sought damages under the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”) and for negligence and wantonness from the other defendants. In their answer, Tenax and Tenax Alabama asserted the immunity defense under the Alabama Workers’ *389 Compensation Act and then moved for a summary judgment on that same ground. Tenax Alabama also claimed that it was entitled to a summary judgment because it did not exist as a legal entity at the time of Dees’s injury on January 14, 2015.
According to Dees’s complaint, in January 2015 he was employed by Onin and, at the time of his injury, “was acting within the line and scope of his job duties and responsibilities with Defendant Onin.” However, Dees testified in deposition that in January 2015 his understanding was that he was employed by Tenax and that Onin was a “temp agency:” Dees further testified that “if I fill out an application [asking for the name of my employer], I don’t put Onin Staffing, I put Tenax.” According to Dees, Tenax trained him, supervised him, took any necessary disciplinary actions against him, and controlled his work. Dees also submitted his work hours to his supervisor at Tenax, and Dees received and signed for a Tenax employee handbook. Onin- never placed Dees in any job other than the job at the Tenax plant.
Melvin Owens, the general manager for the Tenax plant, testified that Tenax had a relationship with Onin whereby Onin supplied Tenax with temporary labor. To pay the workers supplied by Onin, Tenax would write Onin a check, and Onin in turn would withhold appropriate taxes and other items and issue a check to the workers. In 2014, Dees, who had worked for Tenax as a permanent employee on two previous occasions, approached Owens and asked for a job. Owens agreed to hire Dees but instructed him to go to Onin to “process it through,” which Dees did. During this third stint with Tenax, Dees worked full-time, but he was on probationary status and did not receive benefits from Tenax. During his third stint, Dees was fired by Tenax in September 2014, but he was rehired about a month later. When Dees was injured, Tenax prepared an accident report. Owens testified that he considered Dees “to be a Tenax employee like any other Tenax worker in the Evergreen plant” at the time he was injured.
Christa Mrachkovskiy, Oniris director of safety and risk management, testified in deposition that Onin is a “temporary agency” that -provider workers and that Onin “brokerfs] the relationship .between- .a worker and [Oniris] client, or the business providing employment to the worker,” much like “Manpower or Labor Finders and other temporary agencies.” According to Mrachkovskiy, Onin charges a business an hourly rate, “say, $15 an hour. The worker may get $10, and the remaining $5 goes to for [sic] like workers’ compensation premiums, general liability premiums, health insurance,- et cetera.” Mrachkovskiy testified that Onin performs “ministerial duties,” such as “paying the worker, taking out for workers’ comp, taking out general liability insurance, taking out for health insurance,” and -withholding taxes. Onin also conducts criminal backgrohnd checks and drug screenings. According to Oniris “proposal for staffing services” between Onin and Tenax:
“As the employer, Onin Staffing assumes all of the responsibility for personnel administration. These responsibilities include the withholding of taxes, payment of wages, employer contributions for FICA, Federal and State Unemployment taxes, and providing insurance for occupational injuries, and general liability insurance coverage up to $1,000,000. per incident, $2,000,000 aggregate.”
Onin did not provide any training to Dees other than showing him a short video concerning general safety, which is shown to all workers supplied by Onin. According to Mrachkovskiy’s deposition testimony, at some point Dees signed a document that *390 stated, in part: “I understand that I am an employee of Onin Staffing. Only Onin Staffing or I can terminate my employment. I also understand that I have exactly one (1) business day to report back to Onin Staffing for further job assessment and that potential unemployment benefits may be denied to [me] for failure to do so.” Under Onin’s policies -concerning injuries sustained by their employees in the workplace, employees were required to report any work-related injury to their field supervisor immediately and to Onin before the end of the shift during which the employee was injured. Along with Tenax, Onin investigated Dees’s accident. MracK-kovskiy testified that she considered Dees to be a. dual employee of Onin ’and Tenax.
It is undisputed that Tenax and Tenax Alabama merged in December 2014. Tenax was the successor entity, and Tenax Alabama ceased to exist as a legal entity before Dees was injured.
After conducting a. hearing and reviewing the cases upon which the, parties.relied,, the trial court denied Tenax and Te-nax Alabama’s motion for a summary judgment.
Discussion
I.
Concerning. the claims against Tenax Alabama, it is .undisputed that Tenax. Alabama was not a legal entity at the time Dees was injured. In his answer to the mandamus petition, Dees “concedes that the trial court should have granted Defendant Tenax. Manufacturing- Alabama, LLC’s Motion for Summary Judgment. This issue was uncontested at the trial court level by Plaintiff Dees.” Dees’s answer, at 1 n.1. Therefore, a summary judgment is due to be entered in favor of Tenax- Alabama.
II.
Tenax seeks a writ of mandamus directing the trial court to enter a summary judgment in its favor because, Tenax says, it is immune from Dees’s tort claims under the -exclusive-remedy provisions of the Alabama Workers’ Compensation Act. Specifically, Tenax contends that, although Onin was Dees’s “general employer," Tenax was Dees’s “special employer” and, thus, that the exclusive-remedy provisions of the Workers’ Compensation Act extend to Tenax.
“ ‘ “The writ of mandamus is a drastic and extraordinary writ, to be ‘issued only when there is: 1) a.clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995).” Ex parte Carter, [807 So.2d 534,] 536 [(Ala. 2001) ].'
“Ex parte McWilliams, 812 So.2d 318, 321 (Ala. 2001).
‘“Subject to certain narrow exceptions ..., we have held that, because an “adequate remedy” exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not renewable by petition for writ of mandamus.’ Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala. 2002).”
Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So.3d 959, 965-66 (Ala. 2011).
This Court has repeatedly held that the denial of a motion to dismiss is reviewable by a petition for a writ of mandamus when the motion to dismiss asserts immunity under the exclusive-remedy provisions *391 of the Workers’ Compensation Act. See Ex parte McCartney Constr. Co., 720 So.2d 910 (Ala. 1998), Ex parte Progress Rail Servs. Corp., 869 So.2d 459 (Ala. 2003), and Ex parte Rock Wool Mfg. Co., 202 So.3d 669 (Ala. 2016). Further, this Court agrees with the Court of Civil Appeals’ conclusion in Ex parte Salvation Army, 72 So.3d 1224 (Ala. Civ. App. 2011), that the denial of a summary-judgment motion based on a claim of immunity under the exclusive-remedy provisions of the Workers’ Compensation Act is also an exception to the general rule and is reviewable by a petition for a writ of mandamus. See Ex parte Salvation Army, 72, So.3d at 1228 (stating that “whether a claim of immunity is denied following a motion to dismiss or a summary-judgment motion appears to be immaterial to the issue whether such a denial may be reviewed by mandamus”).
In Gaut v. Medrano, 630 So.2d 362 (Ala. 1993), this Court stated:
“Alabama Code 1975, § 25-5-53, provides that an action brought under the Workers’ Compensation Act is the exclusive remedy for an employee’s injuries sustained in the course of his employment. Rhodes v. Alabama Power Co., 599 So.2d 27 (Ala. 1992). The exclusivity bar is an affirmative defense. Rule 8(c), Ala. R. Civ. P. Therefore, on a motion for summary judgment, the defendants have the burden of establishing a prima facie showing as to each element of the defense of exclusivity; if the defendants are able to carry this burden, then the plaintiff must present substantial evidence to overcome this prima facie case. [Ala.]R.Civ.P. 56; Ala. Code 1975, § 12-21-12. Substantial evidence has been defined as ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)....
“The exclusive remedy provision extends to ‘special employers,’ which have been described as ‘individuals or businesses who, for practical purposes, may be considered primary or co-employers of the injured employee.’ Rhodes, supra, at 28 (quoting Tweedy v. Tennessee Valley Authority, 882 F.2d 477, 479 (11th Cir. 1989)). In Terry v. Read Steel Products, 430 So.2d 862 (Ala. 1983) this Court adopted a three-pronged test for determining when an employee of a general employer can become the employee of a ‘special employer’ for purposes of workers’ compensation:
“ ‘ “When a general employer lends an employee to a- special employer, the special employer becomes liable for workmen’s compensation [and thus immune from liability for tort actions brought by the special employee] only if
‘““(a) the employee has made a contract of hire, express or implied, with the special employer;
“ ‘ “(b) the work being done is essentially that of the special employer; and.
“ ‘ “(c) the special employer has the right to control the details' of the work.
“ ‘ “When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen’s compensation.” ’
“430 So.2d at 865 (quoting 1C A. Larson, The Law of Workmen’s, Compensation, § 48 (1980)). The requirement of a contract of hire comports directly with our Workers’ Compensation Act; which, defines an ‘employee’ as a ‘person in the service of another under any contract of *392 hire, express or implied, oral or written.’ Ala. Code 1975, § 25-5-1(5).”
630 So.2d at 364 (footnote omitted).
In the present case, Dees concedes that the work being done by him was that of Tenax and that Tenax had the right to control the details of his work, and Tenax does not argue that Dees had entered into an express contract of hire with Tenax. Thus, the only issue for this Court to decide is whether Dees had an implied contract of hire with Tenax. If an implied contract of hire existed between Dees and Tenax, then Tenax was Dees’s “special employer” and the exclusive-remedy provisions of the Workers’ Compensation Act extend to Tenax.
“This Court has considered a number of factors to be particularly significant to the analysis of [whether the worker impliedly consented to a contract of hire]. One consideration is whether the general employer is, in reality, acting as a ‘labor broker’ or a temporary employment agency for the special employer. Hicks v. Alabama Power [Co.], 623 So.2d [1050] at 1055 [(Ala. 1993)]; Gaut [v. Medrano], 630 So.2d [362] at 367 [ (Ala. 1993) ]. Another consideration is whether the special employer provided the workers’ compensation insurance. See Gaut, 630 So.2d at 363, 368 (holding that alleged special employer Holnam, Inc., which did not provide the employee’s workers’ compensation insurance, was not entitled to a summary judgment); Pinson v. Alabama Power Co., 557 So.2d [1236] at 1237 [(Ala. 1990)] (holding that alleged special employer Alabama Power Company, which did provide the employee’s workers’ compensation insurance, was entitled to a summary judgment). Still another.important consideration is “whether the employment with the borrowing employer was of such duration that the employee could be reasonably .presumed to have evaluated and acquiesced in the risks of his employment.” ’ Gaut, 630 So.2d at 367 (quoting Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117, 122 (3d Cir. 1985)); see also Rast Constr., Inc. v. Peters, 689 So.2d 781, 784 (Ala. 1996). Always, the focus is on what the employee intended in providing services for the alleged special employer.
“Regarding the first consideration, we have explained:
“ ‘Terry v. Read Steel [Products, 430 So.2d 862 (Ala. 1983),] and three of the cases following it [namely, Means v. International Systems, Inc., 555 So.2d 142 (Ala. 1989); Marlow v. Mid South Tool Co., 535 So.2d 120 (Ala. 1988); and Pettaway v. Mobile Paint Mfg. Co., 467 So.2d 228 (Ala. 1985),] have involved general employers that were unambiguously temporary employment placement agencies. Terry and Pettaway were placed with their special employers by Manpower, Inc.; Marlow, by Kelly Services, Inc.; and Means, by Long’s Temporary Services, Inc. In such cases, the employee applies to the general employer for the specific purpose of temporary placement with special employers and thus necessarily agrees to a contract of hire with the special employer. For example, the Court in Pettaway, supra, stated: “Approximately two weeks before his injury, Manpower informed Pettaway of an available work assignment at Mobile Paint. Manpower asked Pettaway if he would accept such an assignment, as, this was the normal procedure. Pettaway agreed to do so.” 467 So.2d at 228 (emphasis added).
“ ‘In Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052, 1054 (Ala. 1986), Pep Services, Inc., had *393 “agreed to supply Crown with gasoline filling station personnel.” The opinion does not discuss how Bechtel started working with Pep or with Crown, but it recites the following, facts in rejecting Bechtel’s argument that she had not consented to a contract of hire with Crown:
“ ‘ “Bechtel submitted to the control and supervision of a Crown employee, Steve Thornton; Bechtel wore uniforms supplied by Crown, bearing Crown labels;. Crown participated in the hiring process; the service station manager (a Crown employee) would sign the weekly time sheets and had authority to transfer Bechtel to another station or to terminate her. This is clearly evidence that Bechtel submitted to employment with Crown, as a special employer, and, therefore, entered into a contract of hire with Crown.”
“ ‘Id. The Court stated that there was no evidence in the record that Bechtel had not consented to a contract of hire with Crown, and it affirmed the summary judgment for Crown.’
“Gaut, 630 So.2d at 366.”
G.UB.MK Constructors v. Garner, 44 So.3d 479, 488-89 (Ala. 2010) (some emphasis added).
In the present case, Dees intended to enter into a contract of hire with Tenax. After asking Tenax’s plant manager for a job, Dees applied to Onin for the job at Tenax at the direction of Tenax’s plant manager.for the specific purpose of placement with Tenax; thus, Dees necessarily agreed to a contract of hire with Tenax. Also, Dees clearly submitted to Tenax’s control and supervision, and he testified that it was his understanding that he was employed by Tenax. That testimony is in sharp contrast with cases, such as Gaut and Hicks v. Alabama Power Co., 623 So.2d 1050 (Ala. 1993), in which this Court concluded that there was a genuine issue of material fact concerning whether an implied contract of hire existed between the employee and the alleged special employer. In Gaut, the plaintiff presented evidence supporting his assertion “that he always believed that ... [the alleged special employer] was [not] his employer” and that “he believed [his general employer] was an independent maintenance contractor.” 630 So.2d at 365. In Hicks, the plaintiff submitted evidence supporting his assertion “that once he secured employment with [his general employer], he did not expect or intend [the general employer] to then transfer him to [the alleged special employer’s] employ.” 623 So.2d at 1055.
Further, contrary to Dees’s assertion before this Court, Tenax provided workers’ compensation insurance, albeit through Onin. In Terry v. Read Steel Products, 430 So.2d 862 (Ala. 1983), this Court quoted with approval the following from St. Claire v. Minnesota Harbor Service, Inc., 211 F.Supp. 521 (D. Minn. 1962):
‘“This brings .up the final and most damning fact. What do the defendant and others who use the services of Manpower get when they buy the commodity that Manpower is selling? In this case the plaintiff received a wage of $1.05 per hour but defendant had to pay $1.71 per hour to get the plaintiff from Manpower. What did the defendant pay that $0.66 differential for? ... There is more than a vague connection between the extra $0.66 per hour paid by defendant and. the Workman’s Compensation which this unfortunate plaintiff received. Part of that $0.66 per hour will pay someone’s premium, and in the eyes of the law it must be deemed to have paid the premium for this plaintiff. In other words, the plaintiff is suing in tort the man who paid for his Workman’s Compensation. *394 The defendant paid part of this extra $0,66 per hour for the sole and express purpose of assuring that employees which Manpower sent over for temporary employment would be covered by Workman’s Compensation. The defendant paid part of this extra $0,66 per hour for the sole and express purpose of not having to defend actions such as the one which has been brought here. This case strikes at the heart of the Workman’s Compensation law; this case is in unequivocal opposition to the well-known principles on which Workman’s Compensation is founded.’ ”
Terry, 430 So.2d at 865 (quoting St. Claire, 211 F.Supp. at 528).
Likewise, in the present case,, the uncon-tradicted evidence indicated that Tenax paid Onin a rate above the rate paid to Dees, in part, to pay for workers’ compensation insurance premiums. Mrachkovskiy spéeifically testified that the amount above that paid to Dees paid for things “like workers’ compensation premiums.” “‘[I]f the special employer doctrine does not apply in such a situation, the employee is effectively suing the entity that provided his1 workers’ compensation insurance, which is-contrary to the reasons for and provisions of the- workers’ compensation statute,’ ” Garner, 44 So.3d at 489 (quoting reply brief).
Also, Dees’s activities with Tenax were “of such duration that [he] could be rea-sohably presumed to have 'evaluated and acquiesced in the risks of his* employment.” See Garner, 44 So.3d at 488. “ ‘[T]his is not a case of an employee’s being lent to another employer for a very short time or being lent on an ad hoc basis and thus having little or no reason to actually consent to a contract of hire with the borrowing employer.’” Garner, 44 So.3d at 489 (quoting Gaut, 630 So.2d at 367). Instead, other than being fired for about a month, Dees worked at the Tenax plant from July 2014 until he was injured in January 2015. There was no evidence indicating that he worked anywhere else during that six months, and every day he worked he used Tenax’s equipment and submitted to Te-nax’s direction,
Based on the above factors, Tenax made a prima facie Showing that it was Dees’s special employer, and Dees did not present substantial evidence to overcome that pri-ma facie showing. Therefore, the exclusive-remedy provisions of the Workers’ Compensation Act extend to Tenax, and a summary judgment in favor of Tenax is due to be entered.
Conclusion
Based on the foregoing, we hold that Tenax and Tenax Alabama have demonstrated a clear legal right to a writ of mandamus directing the Conecuh Circuit Court to. enter a summary judgment in their favor and against Dees.
PETITION GRANTED; .WRIT ISSUED.
Stuart, Bolin, Parker, Wise, and Bryan, JJ., concur.
Murdock, J., concurs in the result.
Shaw, J., recuses himself.

. It appears that Tenax SPA manufactured the machine Dees was operating when he was injured. Tenax SPA is not a party to this mandamus petition.