The primary issue presented on this appeal is whether, for the purposes of the exclusive remedy provisions of the Alabama Workmen's Compensation Act, the plaintiff was an "employee" of Kelly Services, Inc., an employment agency, andalso an "employee" of Mid South Tool Company, Inc., where she was working when she lost one of her fingers in an industrial accident.
A second issue is also presented. The injured employee claims that if she was an "employee" of Mid South, then Mid South had waived its statutory defense of employer immunity by failing to timely raise it as an affirmative defense to her lawsuit.
We affirm Mid South's summary judgment.
 FACTS
Mid South, located in Hartselle, Alabama, builds plastic injection molds. Larry D. Bailey is president of Mid South and his wife Donna is the company's secretary and office manager and handles its payroll and accounting matters. Other than Mr. and Mrs. Bailey, Mid South's management personnel consist of a plant manager and three foremen.
Mid South fills production orders for its customers as orders are received. Because these orders are not constant, Mid South has only approximately 25 full-time employees. Mid South, fills its other employee needs with temporary employees supplied by Kelly Services, Inc.
Kelly's sole business is supplying temporary help to all types of office, commercial, governmental, and industrial concerns. Such concerns call Kelly, indicating the skills, number of persons needed, and the length of time for which they are needed. Kelly then assigns men and women with appropriate skills from among those registered with Kelly and available for temporary assignment. Under the terms of the contract between Kelly and its customer, a certain rate per hour is charged commensurate with the skill level of each worker. From this sum, which the customer pays Kelly, Kelly pays the worker and covers all other employer costs, including workmen's compensation premiums, unemployment compensation taxes, Social Security taxes, and withholding for municipal, state, and federal income taxes. Mid South's business relationship with Kelly is based on an oral agreement. The plaintiff came to work for Mid South upon referral by Kelly.
On December 16, 1985, the plaintiff applied for employment with Kelly's office in Decatur, Alabama. While at Kelly, she filled out an application that asked for her job experience, skills, and education. In addition, she took a dexterity and speed test, which tested her ability to fit bolts of different sizes onto screws. This test was given to the plaintiff as part of the arrangement *Page 122 
between Mid South and Kelly, whereby Kelly tested potential employees for their ability to do Mid South's work.
After submitting her application to Kelly, the plaintiff was called the next morning and told to report to Mid South to begin work. Kelly informed the plaintiff that when she arrived at Mid South there would be a time card for her, that she should punch in, and that she then should report to Tommy Williams, a Mid South foreman, who would be her supervisor. On-site supervision by Mid South personnel is mandated by Kelly's general policies regarding the temporaries it supplies. That is, while a temporary worker is on assignment at the customer's premises, Kelly's customer supervises the temporary worker, i.e., tells him or her what to do, where to work, and how to do the work. If the worker or his product is in any way unsatisfactory, the customer can request that the worker be removed by Kelly from the assignment, and the customer will be billed only for the work performed.
When the plaintiff arrived at Mid South, Tommy Williams or another Mid South employee advised her that she would be working on a sander for her first day. A Mid South employee then demonstrated operation of the sander for the plaintiff.
On her second day at Mid South, the plaintiff started out on the sander, but was later assigned to operate a drill. A Mid South employee showed her how to operate the drill.
On her third day at Mid South, Tommy Williams or some other Mid South employee told the plaintiff to try working the press. A Mid South employee showed her how to operate the press. While she was wiping off her machine during her third day of work, her hand was caught under the hydraulic press during its activating cycle. As a result, she lost a finger on her right hand and suffered burns to two other fingers.
Following her injury, the plaintiff received workmen's compensation benefits at the rate of $92.00 per week for the period from January 1986 through May 6, 1987. These workmen's compensation benefits were paid by CNA Insurance Company, Kelly's workmen's compensation carrier. Workmen's compensation insurance was provided to Mid South's temporary workers by Kelly, with premium payments included in the fee Mid South paid to Kelly. Kelly handled all of the paperwork and payments incident to making workmen's compensation premium payments for the workers it supplied to Mid South.
While the plaintiff was working at Mid South, Mid South supervised her work. Kelly did not provide any on-site supervisors for any Kelly employees assigned to Mid South. While the plaintiff was working there, Mid South provided safety glasses to her, and Mid South employees instructed her regarding which machine to use, when to take breaks and when to clock out, and when to leave one machine and go to work at another machine. The plaintiff knew, while she was working at Mid South, that if she had a particular problem or needed particular instructions, she could seek assistance from a Mid South employee.
 I
Section 25-5-53, Alabama Code 1975, makes workmen's compensation benefits the exclusive remedy for employees injured in the line and scope of their employment. In applicable part, § 25-5-53 provides:
 "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at common law, by statute or otherwise on account of said injury, loss of services or death." (Emphasis supplied.)
Section 25-5-1(6) defines "employee" as follows:
 "(6) EMPLOYEE, WORKER, WORKMEN AND WORKMAN. Such terms are used interchangeably and have the same meaning throughout this chapter, and shall be construed to mean the same. . . . Such terms include every person . . . in the service of another under any contract of hire, express or implied, *Page 123 oral or written. . . ." (Emphasis supplied.)
The issue presented by this appeal is whether the plaintiff, admittedly an employee of Kelly Services, is, for workmen's compensation purposes, also an employee of Mid South. If so, her exclusive remedy against Mid South is the benefits provided by Alabama's Workmen's Compensation Act and the trial court was correct in ruling that she could not maintain an independent action for damages against Mid South.
This court has addressed this specific issue before inTerry v. Read Steel Products, 430 So.2d 862 (Ala. 1983); Pettaway v. Mobile Paint Manufacturing Co.,467 So.2d 228 (Ala. 1985); and Bechtel v. Crown CentralPetroleum Corp., 495 So.2d 1052 (Ala. 1986). The plaintiff candidly concedes that the question "of whether a 'temporary service employee' is restricted to the exclusive remedies of the Alabama Workmen's Compensation Act, would appear to be well-settled in Alabama." In three decisions, beginning in 1983, this Court has established, for workmen's compensation purposes, that a temporary services employee is the employee of both his or her generalemployer (i.e., the employment agency) and his or herspecial employer (i.e., the employer to which the employment agency assigned the employee to work). Plaintiff argues that Mid South should not be allowed to claim "employer immunity" because she alleges that it is undisputed that the plaintiff was employed by Kelly Services, not Mid South. We cannot agree.
An analysis of the facts and legal rationale of the "dual employer" cases decided by this Court demonstrates their applicability to the case at bar. The first case wasTerry v. Read Steel Products, 430 So.2d 862 (Ala. 1983). In that case, the plaintiff was referred to his special employer, Read Steel, by his general employer, Manpower, Inc., an employment agency that provided Read Steel with temporary laborers. 430 So.2d at 862. While working at Read Steel, the plaintiff was injured when his hand caught in a machine he was operating. Plaintiff filed an action for damages against Read Steel. The company's motion for summary judgment, based on the exclusive remedy provision of the Workmen's Compensation Act, was granted. This Court affirmed. 430 So.2d at 867. In what has come to be taken as a statement of the test for establishing a special employer's right to rely on the exclusivity of the workmen's compensation remedies, this Court quoted the following test from 1C A. Larson, The Law of Workmen's Compensation, § 48 (1980):
 "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
 "(a) the employee has made a contract of hire, express or implied, with the special employer;
 "(b) the work being done is essentially that of the special employer; and
 "(c) the special employer has the right to control the details of the work.
 "When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation."
430 So.2d at 865.
Applying Professor Larson's analysis to the facts before it, this Court concluded that Read Steel qualified as a "special employer" for workmen's compensation purposes. Of particular importance, this Court noted that the special employer had indirectly paid the workmen's compensation insurance premiums for the injured plaintiff, by paying the premiums as a part of the fee it paid Manpower. 430 So.2d at 865. This Court found the following language from St.Claire v. Minnesota Harbor Service, Inc., 211 F. Supp. 521
(D.Minn. 1962), particularly appropriate:
 "In other words, the plaintiff is suing in tort the man who paid for his Workman's Compensation. The defendant [special employer] paid part of this extra $0.66 per hour [for workmen's compensation benefits and taxes and insurance] for the sole and express purpose of assuring that employees with Manpower sent over for temporary employment would be covered by Workman's Compensation. The defendant paid part of this extra $0.66 per hour for the sole and *Page 124 
express purpose of not having to defend actions such as the one which has been brought here."
211 F. Supp. at 528 (emphasis in original). In the present case, as in St. Claire, a portion of the fee that Mid South paid to Kelly Services for the temporary workers sent to Mid South (including plaintiff) went to obtaining workmen's compensation insurance for them.
The second case in this Court's dual-employer trilogy isPettaway v. Mobile Paint Manufacturing Co.,467 So.2d 228 (Ala. 1985). In Pettaway, the plaintiff was referred by Manpower, Inc., to work for Mobile Paint Manufacturing Company. Pettaway was paid $3.75 per hour by Manpower. Manpower charged Mobile Paint $5.34 per hour. A portion of the difference was used by Manpower to purchase workmen's compensation insurance for the workers it sent to Mobile Paint. 467 So.2d at 229. While working at Mobile Paint, and while under the supervision and direction of Mobile Paint employees, the plaintiff was injured. He sued Mobile Paint, alleging negligence and breach of contract. Mobile Paint defended the plaintiff's claim, asserting that the plaintiff was its "employee" and was therefore limited to the exclusive remedy of workmen's compensation. The trial court granted summary judgment in favor of Mobile Paint, and this Court affirmed. Simply stated, this Court found the facts of Pettaway "indistinguishable" from those presented in Terry v. Read Steel Products, supra. 467 So.2d at 229. Similarly, the operative facts presented by the instant appeal are indistinguishable from those inPettaway.
The most recent of this Court's three decisions in the dual-employer line is Bechtel v. Crown Central PetroleumCorp., 495 So.2d 1052 (Ala. 1986). In Bechtel, this Court reviewed an employee/plaintiff's claims against her special employer and ruled that the exclusive remedy provision of the Workmen's Compensation Act precluded those claims. As will be seen, the operative facts ofBechtel are, once again, almost identical to those presented by the instant appeal.
In Bechtel, Crown Central Petroleum, a gasoline filling station company, entered into a supply contract with Pep Services, Inc., whereby Pep agreed to supply Crown with service station personnel. 495 So.2d at 1045. The plaintiff was hired pursuant to this supply contract and was designated a Pep employee. Pursuant to its contract, Pep billed Crown for the cost of paying wages, workmen's compensation insurance premiums, unemployment taxes, and Social Security.Id. While working for Crown, the plaintiff was injured. She obtained workmen's compensation benefits from Pep and then sued Crown directly.
Almost as if it had anticipated the argument the plaintiff would make in this case, this Court examined closely theBechtel plaintiff's contention that because she was Pep's employee, she could not be Crown's employee:
 "Certainly, there is substantial evidence that Pep was Bechtel's employer; however, this evidence is not evidence that Crown was not Bechtel's employer, because both Pep and Crown could, under certain fact situations, be considered co-employers of Bechtel — Pep as general employer and Crown as special employer."
495 So.2d at 1054 (emphasis in original) (citations omitted). Similarly, in the instant case, the plaintiff was Kelly's employee. What is crucial is that the plaintiff wasalso Mid South's employee.
The first issue presents no ground for reversing Mid South's summary judgment.
 II
Plaintiff also argues that Mid South, by raising the issue of "employer immunity" in its motion for summary judgment before it had raised the issue in its answer, waived this affirmative defense. We find no merit in this claim.
Mid South's motion for summary judgment, filed October 23, 1987, was based on the exclusive remedy provided by the workmen's compensation statute for employees injured in the line and scope of their employment. Thus, as stated in Mid South's memorandum brief in support of its motion for summary judgment, the issue to be resolved by the motion was: "Whether the plaintiff was an 'employee' of the defendant, *Page 125 
Mid South, at the time of the accident [so that] plaintiff's remedy is limited to that provided by Alabama's Workmen's Compensation Act." In its answer, filed November 10, 1987, Mid South asserted as its first affirmative defense: "Mid South Tool represents to the Court that plaintiff was its employee and that her exclusive remedy as against this defendant is via a workman's compensation suit pursuant to Alabama Code, 1975, § 25-5-53." Plaintiff's contention — that because Mid South's motion for summary judgment based on the exclusive remedy defense was filed prior to Mid South's answer formally asserting that defense, the defense was waived — is not supported by our case law.
 "Under Rule 56, the filing of an answer is not a prerequisite to the consideration of a motion for summary judgment. See First American Bank v. United Equity Corp., 89 F.R.D. 81 (D.D.C. 1981); Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala. 1980)."
Forester Jerue, Inc. v. Daniels, 409 So.2d 830,832 (Ala. 1982). Similarly, this Court has recognized that if a defendant moves for summary judgment before he files an answer, any affirmative defense argued in support of the motion for summary judgment has not been waived. Wallacev. Alabama Association of Classified School Employees,463 So.2d 135, 137 (Ala. 1984). Only if an answer fails to assert an affirmative defense that is argued in a subsequently filed motion for summary judgment is the affirmative defense deemed waived.
Plaintiff cites Bechtel v. Crown Central PetroleumCorp., 451 So.2d 793 (Ala. 1984), in support of her claim that the defense of statutory immunity under §25-5-53 of the Workmen's Compensation Act may not be raised for the first time on a motion for summary judgment. Plaintiff's reliance on Bechtel is misplaced.
The Bechtel decision cited by the plaintiff is only the first of two opinions by this Court in that case. We shall refer to it as Bechtel I. In it, this Court ruled that statutory employer immunity is an affirmative defense subject to the pleading requirements of Rule 8(c), Ala.R.Civ.P. 451 So.2d at 795. This Court pointed out that the defendant had failed to plead statutory immunity in its initial answer. Rather, that defense was raised for the first time by the defendant's subsequently filed motion for summary judgment. 451 So.2d at 794. In addition, this Court noted, five weeks elapsed between the defendant's filing of its motion for summary judgment and the hearing on that motion. During those five weeks, the defendant did not attempt to amend its answer to add the statutory immunity defense. 451 So.2d at 796. In view of those facts, this Court concluded that the trial court improperly had considered the belatedly raised immunity defense. Therefore, the defendant's summary judgment was reversed. 451 So.2d at 796.
On remand, the trial court allowed the defendant to amend its answer to assert the affirmative defense of employer immunity. Summary judgment then was granted again and the plaintiff appealed again. In Bechtel v. Crown CentralPetroleum Corp., 495 So.2d 1052, 1055-56 (Ala. 1986) ("Bechtel II"), this Court concluded that the trial judge did not abuse his discretion in allowing the amendment.
In the case at bar, Mid South based its motion for summary judgment on the defense of statutory employer immunity and also included that defense in its answer. Unlike the situation in Bechtel I, Mid South's answer, formally pleading employer immunity, was filed prior to the hearing on its motion for summary judgment, andprior to the trial court's ruling thereon, and therefore that defense was before the court at the time it considered the summary judgment motion. Mid South's affirmative defense was appropriately pleaded and was properly considered by the trial court.
Based on all of the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur. *Page 126