L. CHARLES WRIGHT, Retired Appellate Judge.
Tom Weinacker filed a complaint for workmen's compensation benefits in the Circuit Court of Mobile County against Miss Universe, Inc. and the City of Mobile, alleging that he was owed benefits for a work-related injury. Following an ore ten-us proceeding, the trial court found in favor of Weinacker and ordered compensation to be paid by Miss Universe. The trial court found that Weinacker was not an employee of the City of Mobile for compensation purposes. Weinacker appeals and Miss Universe cross appeals.
Following negotiations in 1988, Miss Universe entered into an agreement with the City of Mobile to have the Miss USA Pageant in Mobile at the Mobile Municipal Auditorium. The essential terms of the agreement provided that the City of Mobile would provide money and certain services as incentives for Miss Universe and CBS to come to Mobile to telecast the pageant. Among these incentives were provisions that the City of Mobile would pay Miss Universe a $200,000 site fee, provide $50,-000 of labor costs, and provide the auditorium free of charge. Miss Universe also entered into a contract with the IATSE Local 142 Union wherein it agreed that it would hire theatrical labor from the labor pool of that union only. The union agreed “to provide an accounting of labor charges, as well as provide for all workmen’s compensation, FICA, FUTA and Alabama Unemployment Taxes and liability insurance as regards employees working under the jurisdiction of Local 142.” Despite the contract with Miss Universe, the union did not provide any workmen’s compensation insurance on this particular job.
Rex Wilson, the stage manager of the auditorium and an employee of the City of Mobile, was in charge of coordinating the labor force needed for the pageant. Each day, Cliff Davis, an employee of Miss Universe, would tell Wilson how many men he would need and what type of expertise would be required. Wilson would then contact members of the union. When the union members reported to the auditorium, they took directions from Miss Universe personnel. If Miss Universe was not pleased with the performance of a certain union member, Wilson would have the task of terminating that member. Wilson’s only contact with the union members beyond the initial call to work was keeping up with the number of hours each of them worked so that the list could be submitted to Miss Universe for its approval.
The City of Mobile paid the first $50,000 in labor costs. Payment from the City’s fund required approval from Miss Universe. The fund was depleted on February 21, 1989. Following that date, all labor costs were paid by Miss Universe.
On February 22, 1989, Weinacker — a union member — was working in the line and scope of his duty as a stagehand unloading a Gennie Personnel Lift when the lift mechanism collapsed on top of him. The lift was supplied by Miss Universe. Subsequent to the accident, Weinacker was diagnosed as having suffered a 30% compression fracture at L-l.
Weinacker initially asserts that the trial court erred in determining that he was not an employee of the City of Mobile for compensation purposes. He contends that both Miss Universe and the City of Mobile are liable under the workmen’s compensation laws as general and special employers. Miss Universe similarly asserts that the trial court erred in finding it to be Wein-acker’s sole employer.
Weinacker contends that the instant situation is analogous to a “loaned” employee case. He insists that Marlow v. Mid South Tool Co., 535 So.2d 120 (Ala.1988), is controlling. Marlow and its predecessors stand for the proposition that “a temporary services employee is the employee of both his or her general employer (i.e., the employment agency) and his or her special employer (i.e., the employer to which the employment agency assigned the employee to work).” The facts of this case do not lend themselves to a Marlow appli *479 cation. The City of Mobile did not provide or lend employees to Miss Universe. Miss Universe had a contract with the union for that purpose. The City of Mobile merely acted as a conduit through which Miss Universe selected employees from the union pool.
Miss Universe asserts that it was not Weinacker’s employer within the meaning of the workmen’s compensation law. It would have us apply the “control” test as enunciated in American Tennis Courts, Inc. v. Hinton, 378 So.2d 235 (Ala.Civ.App.1979). It points to evidence in the record to show that it was the City of Mobile which hired Weinacker, paid him, and had the authority to fire him. The “control” test, however, is not appropriate in this instance.
We find the test promulgated by the supreme court in Ex parte Stewart, 518 So.2d 118 (Ala.1987), to be applicable. In that case the court found the “control” test to be inappropriate for the following reason:
“Where there is evidence of a measure of control over an employee by two or more putative employers, a finding of ‘control’ and liability in just one of them would be obviously erroneous. As a logical matter, ‘control’ cannot properly be used to establish the compensation liability of one employer as opposed to the other in such a situation.”
Stewart at 120.
When liability must be determined as between two or more putative employers, the supreme court found that the “finder of fact should concentrate, not solely on control, but also on additional indicia of the employment relationship in determining an employee’s status.” Stewart at 121. The supreme court urged the trial court to inquire into the contract for hire to aid it in determining which employer is liable for workmen’s compensation benefits.
We must now determine if the trial court was correct in its evaluation of the indicia of the employment relationship. The record is clear that the City of Mobile exercised little, if any, control over Wein-acker’s employment. The only control the City of Mobile exercised was calling Wein-acker to work, and this was at the direction of Miss Universe. Once Weinacker reported to work, he was supervised by Miss Universe personnel. The only contract relevant to this matter was the employment contract between the union and Miss Universe. The City of Mobile provided a $50,-000 fund from which the initial labor costs were to be paid. This fund was simply an incentive bonus. Payment from the fund required the approval of Miss Universe. At the time Weinacker was injured, that fund had been depleted and Miss Universe was paying the costs directly.
In a workmen’s compensation case this court’s review is limited to a determination of whether there is any legal evidence to support the trial court’s conclusions. If, however, a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte Patterson, 561 So.2d 236 (Ala.1990). Our review of the record indicates that the evidence supports the trial court’s decision that Miss Universe was Weinacker’s employer and was liable for workmen’s compensation benefits.
Weinacker next contends that his loss in earning capacity is greater than that determined by the trial court. We must therefore determine whether there is any evidence to support the trial court’s finding that Weinacker’s earning capacity had been reduced by only 25% as a result of the injury caused by his work-related accident.
The record reflects that Weinacker is 40 years old with a high school education and a history of working heavy manual labor jobs. Prior to the accident, he had worked approximately 12 years as a stagehand. He worked as an electrician, a carpenter, and a rigger. All three jobs involved lifting more than fifty pounds at some point. He made $11.00 an hour as a general stagehand and $16.00 an hour as a rigger. His average weekly wage at the time of the accident was $376.03.
*480 Dr. Zarzour, the orthopedic surgeon, testified that Weinacker sustained a 30% compression fracture at the L-l region and that he had a 10% permanent-partial disability to his back as a whole. The doctor recommended no prolonged bending and no lifting of more than fifty pounds.
At the time of the trial, Weinacker was working 40 hours a week for Harbert International. His average weekly wage was at least $480.00. He testified that this was a temporary job.
The rule of Patterson applies in this instance. The trial court has much discretion in determining the loss-of-earning capacity and may consider such factors as age, education, past work history, and the effect of the injury on the employee’s earning ability. DeHart v. Ideal Basic Industries, Inc., 521 So.2d 136 (Ala.Civ.App.1988). In our review of the record, we find that there is evidence to support the trial court’s conclusion that Weinacker suffered no more than a 25% loss in his ability to earn. This case is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.