Rel: August 29, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

---

### SC-2025-0055

---

## Carol Rogers, as administratrix of the Estate of Susan Bonner, deceased

### v.

## Cedar Bluff Volunteer Fire Department

### Appeal from Cherokee Circuit Court
### (CV-2019-900085)

COOK, Justice.

This is a tragic case involving the death of an automobile-accident

victim and how Alabama's Volunteer Service Act ("the VSA"), § 6-5-336, Ala. Code 1975, applies.[1] Given the Legislature's decision to provide immunity to volunteers under certain circumstances through the VSA, the question to be resolved in this appeal is whether a municipality that has a volunteer fire department can be held vicariously liable for the acts or omissions of a volunteer firefighter.

Carol Rogers, the administratrix of the estate of Susan Bonner, deceased, sued, among others, the Cedar Bluff Volunteer Fire Department ("the CBVFD"), which is a subordinate entity of the Town of Cedar Bluff ("the Town"),[2] and Howard Guice, a former volunteer firefighter and emergency medical technician with the CBVFD, after Bonner was killed in an automobile accident. Guice responded to the accident scene but purportedly negligently contributed to Bonner's death.

The Town moved for a summary judgment on the basis that the CBVFD was one of its subordinate entities and, assuming that he had

---

[1]The VSA is informally known as the "Good Samaritan Act."

[2]Rogers's complaint actually listed only the CBVFD, not the Town, as a defendant. However, as explained in more detail below, because the CBVFD is a subordinate entity of the Town, any arguments that Rogers raises in connection with the CBVFD are, in fact, directed toward the Town.

responded to the accident scene in his capacity as a volunteer firefighter with the CBVFD, Guice was immune from liability under the VSA. As a result, the Town argued that it, too, was immune from liability.

The Cherokee Circuit Court found that, under our Court's prior decision in Hollis v. City of Brighton, 885 So. 2d 135 (Ala. 2004), the CBVFD "is a political subdivision of [the Town] and does not exist separate and apart from [the Town]" and, therefore, that the Town is "immune from liability for the negligence of" its volunteer firefighters, including Guice. It thus entered a summary judgment in favor of the Town. Rogers appealed.

For the reasons explained below, we conclude that, under Hollis, that judgment was proper and is therefore due to be affirmed.

Facts and Procedural History

I. The Underlying Accident

On June 6, 2017, Bonner was driving on County Road 45 in Cherokee County when her vehicle left the roadway and ended up submerged in a creek. After Bonner was rescued by passing motorists, a bystander who also happened to be a volunteer firefighter with the McCord's Crossroads Volunteer Fire Department ("the MCVFD") began

3

performing cardiopulmonary resuscitation ("CPR") on Bonner. At some point thereafter, Cherokee County Emergency Medical Services ("Cherokee County EMS") was notified of the accident, and paramedics were dispatched to the scene.

Guice was nearby, allegedly on a personal errand, and heard the call about the accident on a radio issued to him by the CBVFD.[3] Even though the scene was not within the CBVFD's service area and even though the CBVFD had not dispatched him to the scene, Guice decided to go to the scene to see if he could assist the paramedics. After Guice arrived, the bystander who had been performing CPR on Bonner asked Guice to take over, but Guice declined. Instead, he advised that all resuscitative efforts should cease and stated over his CBVFD-issued radio that a death had occurred at the scene. Guice then allegedly entered the water to help other bystanders search for a possible second victim in Bonner's submerged vehicle.

Five minutes after the bystander ceased performing CPR on Bonner, Cherokee County EMS paramedics arrived at the scene. They

---

[3]That radio gave Guice access to radio frequencies reserved for use by emergency medical personnel and firefighters.

examined Bonner and found that she was warm to the touch, had a pulse, and had responsive pupils. As a result, the paramedics performed CPR on her until she experienced a return of spontaneous circulation. Bonner was transported to the hospital for further treatment but died two days later as a result of anoxic encephalopathy.[4]

## II. Rogers's Lawsuit

After Rogers was appointed as the administratrix of Bonner's estate, she commenced the present wrongful-death action against Guice and numerous fictitiously named defendants, alleging various theories of liability.[5] Rogers later filed an amended complaint substituting the CBVFD and the Cherokee County Association of Volunteer Fire Departments, Inc. ("the Association"), for the fictitiously named defendants.

After the defendants filed their respective answers, Rogers filed a second amended complaint in which she "consolidated all claims under

---

[4]According to the record, anoxic encephalopathy occurs when blood ceases to flow to the brain.

[5]Rogers initially sued the MCVFD; however, the parties later moved to dismiss the MCVFD from her action, and the trial court granted that request.

one claim for wrongful death" against the CBVFD, the Association, and Guice. In her second amended complaint, Rogers alleged that Guice's response to Bonner's accident was deficient and that, because Guice had responded to the scene in his capacity as a volunteer firefighter, his actions or omissions were attributable to both the CBVFD and the Association. Therefore, Rogers alleged, the CBVFD and the Association were vicariously liable for Guice's negligence and/or wantonness.

In response, the Town[6] filed a motion for partial dismissal of Rogers's second amended complaint, in which it argued that Rogers's claims against it were not cognizable because, among other reasons, it was not only immune from liability in general, but was also immune from

---

[6]As noted above, Rogers originally sought to substitute or add the CBVFD, not the Town, as a defendant in its amended complaint. However, early in this litigation, the Town maintained that, because the CBVFD was its volunteer fire department and was not a separate legal entity, the CBVFD was not a suable entity. As a result, the Town consistently referred to itself in place of the CBVFD in its filings below. However, nothing in the record indicates that the Town ever took any formal steps in the trial court to substitute itself for the CBVFD or to otherwise correct the style of the case. In any event, as discussed in more detail below, because the CBVFD is a subordinate entity of the Town, any arguments that Rogers raises in connection with the CBVFD are, in fact, directed toward the Town. See, generally, Ex parte Dixon, 55 So. 3d 1171, 1172 (Ala. 2010).

liability specifically under § 11-47-190, Ala. Code 1975.[7]

In her opposition to the Town's motion for partial dismissal, Rogers argued, among other things, that the Town had failed to adequately demonstrate that it was entitled to immunity under § 11-47-190. Rogers did not address or otherwise refute the Town's contention that the CBVFD was one of its subordinate entities and that it should have been named in place of the CBVFD as a defendant in her lawsuit.

Following some discovery, the Town moved for a summary judgment in its favor.[8] The Association also moved for a summary

---

[7]That Code section states, in relevant part:

"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, … and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."

[8]In its motion, the Town expressly stated that it, as "defendant Town of Cedar Bluff, Alabama, referred to in the complaint, as amended, as Cedar Bluff Volunteer Fire Department," was the party moving for a summary judgment, and it then argued, in a footnote, that the CBVFD was one of its subordinate entities and therefore could not be sued.

judgment in its favor.

As relevant here, in its summary-judgment motion, the Town argued, among other things, that if Guice had been acting in his capacity as a volunteer firefighter when he responded to the accident scene, he would be immune from liability under the VSA, which, it argued, meant that it could not be held vicariously liable for his alleged conduct under the doctrine of respondeat superior. Finally, relying on this Court's prior decision in Hollis, supra, the Town also argued that it did not owe any duty to Bonner because this Court has refused to impose a duty upon a municipality that has established a volunteer fire department. In support of its motion, the Town attached several documents, including a copy of Guice's deposition transcript and a statement that Guice had given about responding to the accident scene.

In her opposition to the Town's motion for a summary judgment, Rogers argued that the Town had waived any right to assert that it was vicariously immune from liability based on any immunity enjoyed by Guice as a volunteer firefighter under the VSA. She then argued in the alternative that if that defense had not been waived, the Town's motion was still due to be denied because, she claimed, the Town had "failed to

present substantial evidence proving beyond question every element necessary to establish [its] immunity defense under the VSA as a matter of law." Specifically, Rogers argued that even if Guice was immune under the VSA, the CBVFD is a nonprofit organization that exists separately from the Town and is expressly exempt from being vicariously immune for the acts or omissions of its volunteers under the VSA. Accordingly, Rogers argued, the Town would not be vicariously immune from liability for the tortious conduct of the CBVFD's volunteers, including Guice. It does not appear that Rogers attached any evidence in support of her opposition to the Town's motion.

### III. The Trial Court's Summary Judgment

On December 14, 2021, the trial court entered a summary judgment in favor of the Town after first finding that the CBVFD was "a political subdivision of" the Town and "does not exist separate and apart from [the Town]." Relying on this Court's decision in Hollis, supra, the trial court then found:

> "[T]he Town of Cedar Bluff is immune from liability for the negligence of a volunteer firefighter under the Volunteer Service Act. As stated in Hollis,
>
> > "'the firefighters, the putative servants in the case now before us, were volunteers who did not receive

9

compensation for their service as volunteer firefighters. Consequently, they were immune from liability for negligence under the Volunteer Service Act. Because the firefighters were immune from liability for negligence under the Volunteer Service Act, no liability for negligence could befall them to be visited upon the City, the putative master in the case now before us. While the plaintiffs allege not only negligence but also wantonness by the firefighters, and while § 6-5-336 excepts wanton volunteers from the immunity, a city cannot be liable for wanton conduct.'

"[885 So. 2d] at 142.

"Assuming that Guice was acting in his capacity as a volunteer firefighter for CBVFD, then he would be immune from negligence as would CBVFD. If Guice acted wantonly, then CBVFD would not be liable for his wantonness. Accordingly, CBVFD is entitled to summary judgment.

"....

"For the reasons set out above, it is ORDERED as follows:

"1. Summary judgment is granted to [the Town]/[CBVFD] as to all claims brought by [Rogers]."

The trial court also entered a summary judgment in favor of the Association.

IV. Postjudgment Motions and Proceedings

Rogers thereafter filed a postjudgment motion to alter, amend, or vacate the summary judgment, but that motion was denied. About a

10

month later, the trial court entered an order certifying its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. This Court dismissed Rogers's subsequent appeal from that judgment after finding that the trial court's Rule 54(b) certification was improper. See Rogers v. Cedar Bluff Volunteer Fire Dep't, 387 So. 3d 131 (Ala. 2023).

On December 9, 2024, Rogers and the Association filed a "Stipulation of Pro Tanto Dismissal With Prejudice," in which they stipulated that all claims by Rogers against the Association were due to be dismissed with prejudice and that such action "shall not affect any of [Rogers's] claims against the other Defendants, which remain pending." On December 19, 2024, the trial court entered an order of pro tanto dismissal, dismissing all claims against the Association.

The same day that Rogers and the Association filed their stipulation, Rogers and Guice filed a "Stipulation and Joint Application for Consent Judgment," in which they asked the trial court to enter a judgment in favor of Rogers in the amount of $100,000 for her negligence claims against Guice. The parties also stipulated that "no part of this judgment represents an award for any claim for wantonness." (Emphasis added.) The trial court entered a final consent judgment in favor of

11

Rogers against Guice later that day.

As stated previously, Rogers now appeals the trial court's summary judgment in favor of "[the Town]/[CBVFD]."

Standard of Review

In reviewing a trial court's summary judgment, it is well settled that

"[w]e review a summary judgment de novo. Potter v. First Real Estate Co., 844 So. 2d 540, 545 (Ala. 2002) (citing American Liberty Ins. Co. v. AmSouth Bank, 825 So. 2d 786 (Ala. 2002)).

" ' "We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. 'Substantial evidence' is 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw."'

"844 So. 2d at 545 (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So. 2d 369, 372 (Ala. 2000)) (citations omitted)."

> "Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P."

Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So. 2d 1135, 1139 (Ala. 2006).

## Discussion

On appeal, Rogers argues that the trial court's summary judgment was improper because (1) the Town waived its immunity defense and (2) even if it had not waived that defense, it still would not be entitled to immunity from liability for Guice's acts or omissions in responding to the accident scene because it failed to produce evidence to support its contentions that Guice was entitled to immunity as a volunteer firefighter under the VSA and that it likewise could be vicariously immune for his acts or omissions.

### I. Whether the CBVFD is a Subordinate Entity of the Town

Before addressing these arguments, there is a threshold issue raised by the parties on appeal that must be addressed first. Specifically, we must determine whether, as Rogers contends, the CBVFD is a nonprofit organization that exists separately from the Town and is

13

expressly exempt from being vicariously immune from liability for the acts or omissions of its volunteers under the VSA. If this is the case, the Town could not be vicariously immune from liability for the tortious conduct of the CBVFD's volunteer firefighters, including Guice.

The VSA was enacted "to encourage volunteers to contribute their services for the good of their communities and at the same time provide a reasonable basis for redress of claims which may arise relating to those services." § 6-5-336(b)(3). Under the VSA's provisions,

> "[a]ny volunteer shall be immune from civil liability in any action on the basis of any act or omission of a volunteer resulting in damage or injury if:
>
> > "(1) The volunteer was acting in good faith and within the scope of such volunteer's official functions and duties for a nonprofit organization, a nonprofit corporation, hospital, or a governmental entity; and
> >
> > "(2) The damage or injury was not caused by willful or wanton misconduct by such volunteer."

§ 6-5-336(d).

While the VSA expressly grants immunity to natural persons serving as "volunteers" for certain entities, it does not expressly grant immunity for those entities. Instead, it either expressly states that those entities can still be held liable for the acts or omissions of their volunteers

14

or it says nothing at all about whether those entities can vicariously share the immunity expressly granted to their volunteers under § 6-5-336(d).

For instance, § 6-5-336(e) states that entities like "nonprofit organization[s]," "nonprofit corporation[s]," and "hospital[s]" can still be held liable for the "negligent act or omission of a volunteer" under the doctrine of respondeat superior "notwithstanding the immunity granted to the volunteer with respect to any omission included under subsection (d)."

In contrast, the statute says nothing about whether "governmental entities" can vicariously share the immunity expressly granted to their volunteers under § 6-5-336(d).

Early in this litigation, the Town maintained that the CBVFD was its volunteer fire department and, thus, was a subordinate entity of the Town and was not a separate legal entity. As a result, the Town consistently argued that, assuming Guice was entitled to immunity from liability for his acts or omissions as a volunteer firefighter for the CBVFD under the VSA, it likewise was vicariously immune for his acts or omissions as a "governmental entity" per our decision in <u>Hollis</u>, <u>supra</u>.

Rogers contends, however, that the CBVFD exists separate and apart from the Town as a "nonprofit organization." According to Rogers, as a "nonprofit organization," the CBVFD can be held liable for the acts or omissions of its volunteers, like Guice, regardless of whether those volunteers are entitled to immunity for their acts or omissions under the VSA. Thus, relying on our Court's prior decision in Ex parte Dixon Mills Volunteer Fire Dep't, Inc., 181 So. 3d 325 (Ala. 2015), Rogers maintains that the CBVFD is a separate entity from the Town and, thus, that the summary judgment in favor of the Town was inappropriate here.

Rogers's reliance on Dixon Mills is misplaced. In that case, the driver of a motor vehicle and his passenger sued the Dixon Mills Volunteer Fire Department and its assistant fire chief (collectively referred to as "the DMVFD") after they had sustained injuries when a fire truck, driven by the assistant fire chief who was responding to a house fire, collided with their vehicle. The DMVFD moved for a summary judgment on the ground that it was immune from liability under the VSA, arguing that it was among the class that the Legislature had intended to protect. The trial court denied the DMVFD's summary-judgment motion, and the DMVFD petitioned this Court for a writ of mandamus.

16

In its petition, the DMVFD maintained that the fire department fell within the class the Legislature had intended to be protected by the VSA. In addressing the DMVFD's argument, our Court noted that it appeared that the DMVFD was claiming that the fire department was vicariously immune from liability for the assistant fire chief's allegedly negligent acts based on its respondeat superior relationship with him.

Our Court held that this argument was without merit. Although we concluded that the assistant fire chief was entitled to the immunity afforded to a volunteer firefighter under the VSA, we held that the fire department could not vicariously share that immunity based on its master-servant relationship with him. Specifically, we held that because the fire department "was <u>incorporated specifically for the 'purpose of forming a non-profit corporation … exclusively for charitable … purposes within the meaning of Section 501(c)(3) of the U.S. Internal Revenue Code of 1954</u>,'" 181 So. 3d at 332 (emphasis added), the fire department was "expressly foreclosed, under section (e) of the Volunteer Service Act, from vicariously sharing immunity with the firefighters based on the master-servant relationship," <u>id.</u> at 337.

Alabama law provides that volunteer fire departments "<u>shall</u> be

17

organized and incorporated … as a nonprofit organization <u>or</u> as an authority of a municipality, fire district, or other legal subdivision." § 9-3-17(a)(1), Ala. Code 1975 (emphasis added). Further, the VSA defines a "nonprofit organization" as "[a]ny organization which is exempt from taxation pursuant to Section 501(c) of the Internal Revenue Code, 26 U.S.C. Section 501(c), as amended." § 6-5-336(c)(3).

Unlike the volunteer fire department in <u>Dixon Mills</u>, which "was <u>incorporated specifically for the 'purpose of forming a non-profit corporation … exclusively for charitable … purposes within the meaning of Section 501(c)(3) of the U.S. Internal Revenue Code of 1954</u>,'" 181 So. 3d at 332 (emphasis added), Rogers has not pointed us to any evidence in the record showing that the CBVFD was incorporated for this purpose. In fact, the record shows the opposite to be true.

For instance, neither the CBVFD's "Standard Operating Guidelines" nor its mission statement contained therein make any mention that it was incorporated for a noncharitable purpose. Rogers even concedes in her brief on appeal that the "CBVFD is not [a] separately incorporated legal entity." Rogers's brief at 32.

Additionally, unlike the fire department in <u>Dixon Mills</u>, partial

funding for the CBVFD comes from the Town itself, with the Association directing the allocation of funds among different fire departments. Furthermore, Steven Kimmons, the CBVFD's chief, testified during his deposition that he reports directly to the mayor of the Town. Our Court has recognized that this connection between a fire department and a municipality does not prevent that fire department from being deemed a "volunteer" fire department, thus entitling the municipality to be vicariously immune from liability for the acts of the fire department's volunteer firefighters. See Ex parte Labbe, 156 So. 3d 368, 373 (Ala. 2014) (concluding that the agreement between the city and the fire department, as well as the donations made to the fire department by the city, did not alter the fire department's status as a "volunteer" fire department and that, because the firefighters were immune from liability for their negligent and wanton acts, the city was likewise immune from liability for the negligent and wanton acts of the firefighters).

Moreover, the record indicates -- and Rogers does not refute -- that the CBVFD is a member of the Association. In Article III of its "By-Laws," the Association defines member departments as "those incorporated volunteer fire departments serving any portion of Cherokee

19

County, Alabama, and <u>any municipality situated in Cherokee County which operates and maintains a volunteer fire department</u>." Section 11-43-140, Ala. Code 1975, expressly authorizes municipalities, like the Town, to operate and maintain volunteer fire departments: "Cities and towns may maintain and operate a volunteer or paid fire department and may do any and all things necessary to secure efficient service." Rogers has not pointed us to any evidence in the record showing that the Town does not "maintain and operate" the CBVFD. Based on the foregoing, we agree with the trial court that the CBVFD "is a political subdivision of [the Town] and does not exist separate and apart from [the Town]."[9]

As stated previously, under the VSA, any "volunteer" can be immune from civil liability if he or she is acting within the line and scope of his or her duties as a volunteer for, among other entities, a "governmental entity." § 6-5-336(d). The VSA defines a "governmental

---

[9]Because the CBVFD is not a separately incorporated entity, any lawsuit purportedly brought against it is, in fact, against the Town. Indeed, our Court has previously explained that "'departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority.'" <u>Ex parte Dixon</u>, 55 So. 3d 1171, 1172 n.1 (Ala. 2010) (quoting 56 Am. Jur. 2d <u>Municipal Corporations</u> § 787 (2000)).

entity" as "[a]ny county, <u>municipality</u>, township, … or subdivision, governmental unit, other special district, similar entity, or any association, authority, board, commission, division, office, officer, task force, or other agency of any state." § 6-5-336(c)(1) (emphasis added). It is undisputed that the Town is a municipality. Thus, in evaluating the remainder of Rogers's arguments on appeal, we will focus our analysis on whether the trial court properly entered a summary judgment in favor of the Town on the basis that it was vicariously immune from liability for Guice's acts or omissions as a CBVFD volunteer firefighter.

### II. Summary Judgment in Favor of the Town

#### A. Whether the Town Waived Its Immunity Defense

Initially, we note that Rogers argues that the Town has waived any right it had to claim immunity in this case because it did not specifically allege in its pleadings below that it should be vicariously immune from liability for Guice's acts or omissions, assuming that Guice was acting as a volunteer firefighter. Our Court has recognized, however, that a municipal-immunity defense is not waived as long as it is asserted by a defendant at some point before a judgment is entered. Compare <u>City of Birmingham v. Business Realty Inv. Co.</u>, 722 So. 2d 747, 751 (Ala. 1998)

(holding that the city waived its defense of municipal immunity under § 11-47-190 after it had "every opportunity to raise the defense" before entry of a judgment and failed to do so), with Marlow v. Mid South Tool Co., 535 So. 2d 120 (Ala. 1988) (holding that employer did not waive affirmative defense of employer immunity under the Workmen's Compensation Act by raising it in its motion for summary judgment before it raised it in its answer).

Moreover, Rogers does not cite any legal authority in her brief on appeal that suggests that, in asserting a specific type of immunity affirmative defense like the one at issue here, a defendant must specifically state what kind of immunity is being invoked. See Rule 28(a)(10), Ala. R. App. P. Here, the record indicates that the Town not only asserted generally that it was immune from liability in each of its answers below and in its motion for partial dismissal of Rogers's second amended complaint, but also specifically asserted in its motion for a summary judgment that it was vicariously immune from liability for Guice's acts or omissions, assuming that Guice was acting as a volunteer firefighter and was, thus, entitled to immunity under the VSA. Therefore, we see no reason to conclude that the Town waived any right

22

it had to claim immunity under the VSA.

### B. Whether a Genuine Issue of Material Fact Exists Regarding the Town's Entitlement to Immunity per Our Decision in Hollis

Turning to whether a genuine issue of material fact exists as to whether the Town can be vicariously immune from liability for Guice's acts or omissions, we note that, generally, the vicarious liability of a putative master under the rule of respondeat superior depends upon the liability of the putative servant. See Larry Terry Contractors, Inc. v. Bogle, 404 So. 2d 613, 614 (Ala. 1981) ("'[W]hen [a] principal and his agent are sued in [a] joint action in tort for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is under the rule of respondeat superior, a verdict in favor of the servant entitles the master to have the verdict against him set aside.'" (quoting Louisville & Nashville R.R. v. Maddox, 236 Ala. 594, 600, 183 So. 849, 853 (1938))), and Gore v. City of Hoover, 559 So. 2d 163, 165 (Ala. 1990) (holding that a city could not be held vicariously liable for the act of a magistrate who was immune from liability), overruled on other grounds, Franklin v. City of Huntsville, 670 So. 2d 848 (Ala. 1995). "'Thus, if a putative servant is not liable, either because he is innocent or because he is immune, no

23

liability exists to be visited upon the putative master under the rule of respondeat superior.'" Wheeler v. George, 39 So. 3d 1061, 1090 (Ala. 2009) (quoting Hollis, 885 So. 2d at 141).

As stated previously in this opinion, the VSA grants immunity to natural persons serving as "volunteers" for certain entities. The VSA expressly states that certain entities are not entitled to such immunity, including nonprofit organizations, nonprofit corporations, and hospitals. See § 6-5-336(e). These entities can still be held liable for the "negligent act or omission of a volunteer" under the doctrine of respondeat superior "notwithstanding the immunity granted to the volunteer with respect to any act or omission included under subsection (d)." § 6-5-336(e). In contrast, the VSA does not include such an express exception to immunity for "governmental entities" like the Town. See Industrial Dev. Bd. of City of Montgomery v. Russell, 124 So. 3d 127, 136 (Ala. 2013).

Since the VSA was enacted, our Court has addressed the extent to which the other entities identified in the VSA can be vicariously immune for the acts or omissions committed by their volunteers that are expressly granted immunity under the statute. As the trial court recognized in its summary judgment, our Court specifically addressed the liability of a

municipality -- the putative master -- for the alleged negligent and wanton acts of its volunteer firefighters -- the putative servants -- in Hollis, supra.

In Hollis, the plaintiffs sued the City of Brighton for its fire department's failure to extinguish a fire that destroyed their house. Specifically, the plaintiffs alleged, among other things, that the City of Brighton was vicariously liable for the negligence or wantonness of the members of the fire department.

The City of Brighton filed a motion for a summary judgment in which it argued, among other things, that the individual volunteer firefighters were immune from liability pursuant to the VSA and that it was, therefore, protected from liability. The trial court agreed and granted the City of Brighton's motion, and the plaintiffs appealed.

On appeal, our Court concluded that the firefighters were "volunteers" within the meaning of the VSA and that, "in creating a volunteer fire department, a city does not thereby undertake a legally enforceable duty to provide skillful fire protection." 885 So. 2d at 141. We reasoned that "[b]ecause, in creating a volunteer fire department, a city is relegated to the vagaries of volunteer manpower, the undertaking

25

by the city is too indistinct to support a legally enforceable duty to provide skillful fire protection." Id. Thus, this Court affirmed the summary judgment as to the direct-liability claim against the city because "the [c]ity did not owe a duty to provide skillful fire protection." Id.

As to the plaintiffs' claim seeking to hold the City of Brighton vicariously liable for the acts or omissions of the firefighters, our Court, relying on the respondeat superior principles provided above, stated:

> "[T]he firefighters, the putative servants in the case now before us, were volunteers who did not receive compensation for their service as volunteer firefighters. Consequently, they were immune from liability for negligence under the Volunteer Service Act. Because the firefighters were immune from liability for negligence under the Volunteer Service Act, no liability for negligence could befall them to be visited upon the [c]ity, the putative master in the case now before us. While the plaintiffs allege not only negligence but also wantonness by the firefighters, and while § 6-5-336 excepts wanton volunteers from the immunity, a city cannot be liable for wanton conduct."

Id. at 142 (emphasis added). For these reasons, our Court affirmed the summary judgment in favor of the City of Brighton.

Here, in its summary-judgment motion, the Town argued, among other things, that if Guice had responded to the accident scene in his capacity as a firefighter with the CBVFD, he would have been doing so as a volunteer and, thus, would have been immune from liability under

26

the VSA for any of his acts or omissions. As a result, the Town maintained that it, too, would have been immune from vicarious liability given that our Court made clear in Hollis, supra, that a city cannot be liable for the acts or omissions of its volunteer firefighters who are immune from liability under the VSA.

In response, Rogers argued that a genuine issue of material fact exists as to whether Guice was acting "within the scope of his official functions and duties" as a volunteer based on the Town's apparent concession that Guice did not respond to the scene of Bonner's accident in his capacity as a CBVFD volunteer firefighter. Rogers also argued that there was sufficient evidence from which a reasonable jury could determine that Guice's conduct was wanton and, thus, that he was not entitled to immunity under the VSA. Under these circumstances, Rogers argues that because a genuine issue of material fact exists as to whether Guice's conduct entitled him to immunity under the VSA, a genuine issue of material fact also exists as to whether the Town was vicariously immune from liability for his alleged acts or omissions.

As noted previously, § 6-5-336(d) of the VSA provides that a "volunteer" is immune from civil liability provided that he or she was

acting in "good faith" and "within the scope of such volunteer's official functions and duties" and so long as the damage or injury was not "caused by willful or wanton misconduct." The VSA defines a "volunteer" as "[a] person performing services for … a governmental entity without compensation, other than reimbursement for actual expenses incurred." § 6-5-336(c)(4).

We have already established that the Town fits the definition of a "governmental entity" under the VSA. See Part I of "Discussion" section, supra. See also § 6-5-336(c)(1). Further, it is undisputed that Guice, the purported servant in this case, served the Town as an unpaid volunteer firefighter for the CBVFD. Additionally, the record reflects that: (1) Guice consistently referred to himself as a volunteer in his deposition testimony, (2) he completed the 160-hour course required to become a certified volunteer firefighter, (3) he attended CBVFD meetings and trainings monthly, (4) the CBVFD provided all equipment Guice needed to perform his duties, and (5) he did not receive compensation from the CBVFD other than a $10 fuel reimbursement, which, the record reflects, was strictly for reimbursement and was not a compensation for services and, thus, does not nullify Guice's status as a "volunteer" under the VSA.

28

See Hollis, 885 So. 2d at 141 (explaining that firefighters' receipt of $10-per-fire stipend for expenses did not constitute substantial evidence that the firefighters were compensated for their services such that they were professionals rather than volunteers for the purposes of the VSA).

The record also indicates that Guice responded to the scene of Bonner's accident after hearing about it on a radio issued to him by the CBVFD. After Guice arrived, the bystander who had been performing CPR on Bonner asked Guice to take over, but Guice declined. Instead, he advised that all resuscitative efforts should cease and stated over his CBVFD-issued radio that a death had occurred at the scene.

Rogers argues that there is sufficient evidence from which a reasonable jury could determine that Guice's conduct was wanton. According to Rogers, Guice admitted that he did not make a good-faith effort to provide basic life support and first aid to Bonner that day. Moreover, Rogers says, Guice admitted in his deposition that he knew Bonner had been submerged under water, that he was trained to always perform CPR on submersion patients, and that he knew the general rule is: when in doubt, perform CPR. Under these circumstances, Rogers argues that a genuine issue of material fact exists as to whether Guice

was wanton and, thus, whether the Town could be immune from liability in this case.

Rogers is correct that, under § 6-5-336(d)(2) of the VSA, volunteers cannot be immune for wanton conduct. But, assuming Guice could be liable for wanton conduct, the Town cannot be liable for the wanton conduct of its servant. See Town of Loxley v. Coleman, 720 So. 2d 907, 909 (Ala. 1998), and Hilliard v. City of Huntsville, 585 So. 2d 889, 892 (Ala. 1991). In particular, in Hollis, supra, our Court recognized that while a volunteer firefighter's wanton conduct may prevent him or her from being immune under the VSA, it has no bearing on whether a municipality can be immune. See Hollis, 885 So. 2d at 142 ("While the plaintiffs allege not only negligence but also wantonness by the firefighters, and while § 6-5-336 excepts wanton volunteers from the immunity, a city cannot be liable for wanton conduct" (citing Loxley and Hilliard) (emphasis added)).[10] Based on the foregoing, Rogers failed to

---

[10]To the extent that Rogers argues that Guice should lose his immunity because he did not act in "good faith," we note that Alabama's municipal-immunity statute, § 11-47-190, Ala. Code 1975, states, in relevant part:

"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless

30

demonstrate that a genuine issue of material fact existed as to whether the Town is vicariously immune from liability for Guice's allegedly wanton acts or omissions in this case, and, thus, the summary judgment in its favor is due to be affirmed.

Conclusion

For the reasons stated above, we affirm the trial court's summary judgment in favor the Town.

AFFIRMED.

Stewart, C.J., and Shaw, Wise, Sellers, McCool, and Lewis, JJ., concur.

---

> such injury or wrong was done or suffered through the
> neglect, carelessness, or unskillfulness of some agent, officer,
> or employee of the municipality engaged in work therefor and
> while acting in the line of his or her duty ...."

(Emphasis added.) Stated another way, under that statute, a "city or town" cannot be liable for the intentional, wrongful conduct of its "agent, officer, or employee." Even if Guice's conduct was not done in "good faith" and was not done within the "scope of [his] official functions and duties" as a volunteer firefighter with the CBVFD, thereby preventing him from being entitled to immunity under § 6-5-3236(d)(1) of the VSA, § 11-47-190, which was raised in the Town's filings below, makes clear that the Town could not have been liable for that conduct because it would have been intentional, wrongful conduct.

31

Bryan and Mendheim, JJ., concur in the result.